# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**DANUBIS GROUP, LLC,**

                              **Plaintiff,**

**-vs-**                                                    **Case No.  6:14-cv-32-Orl-37DAB**

**LANDMARK AMERICAN INS. CO.,**

                              **Defendant.**
_____

# REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

         This cause came on for consideration following an evidentiary hearing on a series of troubling

matters raised by Defendant in a Motion to Dismiss Complaint for Fabrication of Evidence, Fraud

upon the Court, Egregious Discovery Practices and Violation of Court's Discovery Order (Doc. 83).

As set forth in detail below, upon a full review of the Court filings, the history of this case, the

evidence submitted at hearing, and the applicable law, the Court finds the Complaint to be untenable,

and further finds that Plaintiff and its counsel have engaged in certain misconduct that is in violation

of the Federal Rules of Civil Procedure and the local rules and orders of this Court, and significant

sanctions, including dismissal of the Complaint, are warranted.

         It is therefore **respectfully recommended** as follows:

| |
|---|
| **MOTION:**     **LANDMARK'S MOTION FOR PROTECTIVE ORDER** **(Doc. No. 72)** |
| **FILED:**     **October 29, 2014** |
| _____ |
| **THEREON** it is **RECOMMENDED** that the motion be **DENIED** as moot, in view of the other relief recommended herein. |

| MOTION: | LANDMARK'S MOTION FOR ENLARGEMENT OF TIME TO COMPLETE DISCOVERY (Doc. No. 76) |
|---|---|
| FILED: | November 4, 2014 |

THEREON it is RECOMMENDED that the motion be DENIED as moot, in view of the other relief recommended herein.

| MOTION: | MOTION TO DISMISS COMPLAINT FOR FABRICATION OF EVIDENCE, FRAUD UPON THE COURT, EGREGIOUS DISCOVERY PRACTICES, AND VIOLATION OF DISCOVERY ORDER (Doc. No. 83) |
|---|---|
| FILED: | November 16, 2014 |

THEREON it is RECOMMENDED that the motion be GRANTED in part. The Complaint should be dismissed, as sanction, and Plaintiff and its counsel should be ordered to pay Defendant's attorney's fees and costs incurred, in an amount to be determined.

| MOTION: | MOTION TO STRIKE PLAINTIFFS' RESPONSE (Doc. No. 113) |
|---|---|
| FILED: | December 23, 2014 |

THEREON it is RECOMMENDED that the motion be DENIED.

| MOTION: | MOTION TO INVOKE INHERENT POWER TO ENTER FINAL JUDGMENT (Doc. No. 114) |
|---|---|
| FILED: | December 23, 2014 |

THEREON it is RECOMMENDED that the motion be GRANTED, in part, to the extent it seeks dismissal of the Complaint.

| | |
|---|---|
| **MOTION:** | **DEFENDANT, LANDMARK AMERICAN INSURANCE COMPANY'S MOTION FOR LEAVE TO AMEND BY INTERLINEATION ITS SUPPLEMENTAL BRIEF TO ITS MOTION TO DISMISS, PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW AND MOTION TO INVOKE THE COURT'S INHERENT POWER TO ENTER FINAL JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56(F) [D.E. #114] TO CORRECT SCRIVENERS ERROR IN ¶19(E) (Doc. No. 117)** |
| **FILED:** | **January 12, 2015** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED** as moot. The testimony referred to is incoherent and of no importance, in light of the findings set forth herein.

## I. Background

In order to appreciate the extent of the misconduct the Court finds occurred in this matter, a full understanding of the filings to date is necessary.

*The Complaint and Removal*

On October 17, 2013, Plaintiff, Danubis Group, LLC ("Danubis") filed this action for breach of contract (Count One) and for declaratory judgment (Count Two) against its commercial property insurer, Landmark American Insurance Company ("Landmark"), in state court.  The Complaint was signed by Kevin C. Ambler, Esquire. Mr. Ambler has represented Plaintiff throughout this proceeding and for a significant period of time prior to instituting suit. According to the allegations of the Complaint:

> 9. On September 16, 2009, the Property was being leased by Plaintiff to a new tenant, Richard MacKizer on a month to month basis while renovations were being performed on the property to adapt it to the tenant's requirements for its business and a long term lease was entered into for a period of five (5) years with a monthly lease payment of $8,500.00 commencing on November 1, 2009. The tenant for the Property, Mr. MacKizer, was in the process of renovations to the Property to open his restaurant, Belly Buster, when, on October 18, 2009, the Property sustained extensive damage as a result of vandalism and theft of personal property including, but not limited to, HVAC compressors, copper tubing for freezers, coolers and ice machines, which theft

and vandalism rendered the Property unuseable as a commercial restaurant property for the tenants purposes. As a direct result of the theft and vandalism to the Property, Mr. MacKizer surrendered possession of the Property to the Plaintiff in mid December, 2009.

10. The Plaintiff was unable to obtain lease payments from a new tenant for the Property until June, 2010, but had to accept a lower monthly lease payment of $7,000.00, which was a reduction in monthly lease payments to the Plaintiff of $1,500.00 compared to what Plaintiff would have received under the Belly Buster lease.

11. The Defendant LANDMARK took an exceedingly and unjustifiably long time to partially reimburse Plaintiff for the losses sustained on October 18, 2009, and never fully paid for all of Plaintiff's damages from the October 18, 2009 claim[][u]nder the Policy, including, but not limited to, the loss of rental income from the property that was a direct and proximate result of the theft and vandalism to the property on October 18, 2009.

***

20. Plaintiff provided Defendant with an Affidavit of Gary Metzger dated June 15, 2010, which states that as of September 16, 2009, he took possession of the Property on a month-to-month basis for rent to commence as of November 1, 2009 and the interim period (September 16, 2009 to November 1, 2009) to be used for renovation and set-up for Belly Buster Restaurant. Mr. Metzger's Affidavit sets out that the tenant was to pay Plaintiff $8,500.00 in monthly lease payments. However, Mr. Metzger was in the process of making renovations to the Property for his business when the theft and vandalism occurred on October 18, 2009, making the Property unusable for the tenant's commercial restaurant. A copy of Mr. Metzger's June 15, 2010 Affidavit is attached hereto as Exhibit "B."

(Doc. 4).

The Affidavit attached to the Complaint reads as follows:

AFFIDAVIT

The undersigned, being first duly sworn, deposes and says as follows:

I. Affiant is over the age of 18 and has personal knowledge of the statements contained herein.

2. On September 16, 2009, I, Gary Metzger, with affiliates that included Richard MacKizer, received keys and took possession of the Belly Buster location at 1870 State Road 436 Winter Park, FL 32792. We began a month-to-month agreement with the owners, rent to commence as of November lst triple net for $8500 a month with the interim period to be used for renovation and set-up. We placed $100,000 in escrow

with our attorney Brian Herzig for this tenancy. We were in the process of renovation when the theft on the exterior of the property occurred. In mid December of 2009 we surrendered keys back to the landlord because we could not proceed without refrigeration for the entire building of the premises. See attached for costs associated with our involvement.

Under penalties of perjury, I declare that I have read the foregoing, and the facts alleged are true, to the best of my knowledge and belief.

Executed this 15th day of June, 2010.
/s/

(Doc. 4-1).  Despite the reference to "attached costs," no document is attached.

In the Complaint, Plaintiff sought "a money judgment for the Plaintiff's loss of business rental income totaling One Hundred Fifty-Six Thousand Dollars," as well as an unspecified amount for the alleged "unpaid portion of Plaintiff's equipment loss according to proof at trial. . . " (Doc. 4, p. 7). Relying on diversity jurisdiction, Defendant filed a Notice of Removal in this Court on January 8, 2014 (Doc. 1), and, on January 9, 2014, Defendant filed an Answer to Count One and a Counterclaim for Declaratory Judgment (Doc. 7).[1] From the outset, Plaintiff and Mr. Ambler failed in their obligations regarding this federal court litigation.

*Plaintiff does not respond to jurisdictional discovery or to defense counsel*

On its own motion, the District Judge issued an Order directing Landmark to file an Amended Notice of Removal by January 27, 2014, identifying the citizenship (as opposed to the residency) of each of Plaintiff's members, in order to establish subject matter jurisdiction (Doc. 9).  Although Landmark made efforts to obtain this information, Plaintiff's counsel was not cooperative. Landmark filed a motion to enlarge the time to comply with the Court's Order, noting that its counsel had "reached out to Plaintiff's counsel" and served discovery to obtain the citizenship information, and

---

[1]Defendant sought dismissal of Count Two (for Declaratory Judgment) and the Court denied that motion to dismiss, by subsequent Order (Doc. 35).  Defendant thereafter filed its Answer to the Count for Declaratory Relief (Doc. 37). On May 14, Plaintiff moved to dismiss Landmark's counterclaim for Declaratory Relief (Doc. 41).  The District Court denied the motion as untimely and otherwise without merit (Doc. 43).

had "requested that Plaintiff expedite its responses in order to comply with this Court's deadline" but had received no response from Mr. Ambler (Doc. 15).   Landmark attached to its motion, correspondence it sent to Mr. Ambler, which reads, in part:

> Dear Mr. Ambler:
>
> As you know, the undersigned represents the interests of Landmark American Insurance Company with regard to the above-referenced matter. **We have left you messages and sent correspondence regarding the domicile of your client's members and/or managers but we have not received a response. Please call, email or correspond in some way** to let us know if your client is agreeable to either providing the discovery responses or perhaps an affidavit or a letter from you regarding the domicile of each person listed in the Secretary of State records.

(Doc. 15-2 emphasis added).   By endorsed Order, the District Judge granted the motion for extension of time, and **ordered Mr. Ambler to provide responses to the discovery requests on or before February 13, 2014**, noting: "The Court takes seriously Counsel's responsibility to return calls, correspondence and requests for cooperation and will take a dim view of any demonstrated failures in that regard." (Doc. 16).[2]

> *Plaintiff does not respond to the Court Order*

Despite the Court Order to provide discovery responses by February 13, no responses were timely served by Plaintiff.   Therefore, on February 14, 2014, Landmark filed a second motion for extension of time, noting that it could not provide the answers to the discovery to the Court, as Plaintiff's responses were not filed, as ordered (Doc. 19).   Plaintiff failed to respond to the motion for extension of time.

---

[2]Shortly thereafter, the parties moved to be allowed to conduct the case management conference telephonically (Doc. 17).   The undersigned denied the motion, noting: "In light of the difficulties already encountered with respect to case management and professional communications, adhering to the requirement of a face to face meeting as contemplated in the Local Rules is appropriate here." (Doc. 18).

On February 28, 2014, Landmark filed a supplement to its motion, noting that "despite Landmark's effort to secure Plaintiff's responses to its discovery requests," Plaintiff had *still* not provided responses (Doc. 20).  The District Judge promptly scheduled a status conference (Doc. 21).

On March 11, 2014, Defendant filed a motion to deem its request for admissions to be admitted, as Plaintiff had not timely served any response or objections to them (Doc. 25).  The motion included a copy of Landmark's counsel's February 26, 2014 letter to Mr. Ambler, advising that the responses were overdue and "[o]nce again, please provide us with Plaintiff's responses as soon as possible." (Doc. 25-2).

Mr. Ambler appeared at the March 20, 2014 status conference, to account for his conduct (Doc. 26).  The minutes reflect, in part, as follows:

> Court inquires of Plaintiff as to why he has not responded to discovery pertaining to subject matter jurisdiction.
> Counsel apologizes and states personal issues were involved but that things are under control now.
> * * *
> Defendant states that requests for admissions still outstanding

(Doc. 26).  Plaintiff was *again* ordered to provide the discovery to Defendant, within seven (7) days of the hearing.  *Id.*, *see also* endorsed Order at Doc. 27.  The discovery was finally produced by Plaintiff on March 24, 2014 (Doc. 29).  Thus, Mr. Ambler's failure to respond to Landmark's counsel's formal and informal discovery requests, failure to respond to several motions, and Plaintiff's failure to timely comply with a court order caused defense counsel and the Court to expend significant effort to compel compliance, and resulted in a **two month** delay in the proceedings.

*The Case Management Meeting and Report*

Having finally established that the Court had diversity jurisdiction over this matter, the parties met in person to prepare the required Case Management Report.  The Report notes, among other

things, that the parties agreed to exchange Rule 26(a)(1)(A)-(D) disclosures, to include "*documents*

*supporting plaintiff's claims*" by May 2, 2014 (Doc. 32, p. 3 emphasis added).

The Case Management and Scheduling Order ("CMSO") was entered by the Court on April

2, 2014 (Doc. 36). The Court adopted the May 2 deadline set forth by the Parties for exchange of

Mandatory Initial Disclosures. The Court also set case deadlines, including a discovery deadline of

November 7, 2014, and a June 6, 2014 deadline for filing motions to add parties or to amend

pleadings. *Id.* The CMSO provides, in part:

> VI. SANCTIONS – The Court will impose sanctions on any party or attorney: 1) who
> fails to attend and to participate actively in the meeting to prepare the Joint Pretrial
> Statement, or who refuses to sign and file the agreed document; 2) who fails to attend
> the Final Pretrial Conference, or who is substantially unprepared to participate; 3) who
> fails to attend the mediation and actively participate in good faith, or who attends the
> mediation without full authority to negotiate a settlement, or who is substantially
> unprepared to participate in the mediation; or 4) who otherwise fails to comply with
> this order. Sanctions may include but are not limited to an award of reasonable
> attorney's fees and costs, the striking of pleadings, the entry of default, the dismissal
> of the case, and a finding of contempt of court. See Fed.R.Civ.P. 16(f) and 37; Local
> Rules 9.05(c), (e); 28 U.S.C. § 1927.

(Doc. 36).

*Discovery Difficulties Continue*

Defendant served discovery requests on Plaintiff, in early July 2014. On August 8, 2014, the

day its responses were due to be served, Plaintiff, through Mr. Ambler, moved for a 30 day

enlargement of time until September 8, 2014, in which to respond to the First Set of Interrogatories

and Request to Produce propounded by Defendant (Doc. 44). The Court denied the motion on August

18, 2014 (Doc. 46), stating:

> As set forth in the Response (Doc. 45), good cause has not been shown for such a
> lengthy extension, nor has counsel explained why the responses could not have been
> completed prior to all of the August commitments he mentions. Having brought this
> action, Plaintiff and its counsel must either make the time to prosecute it, or dismiss
> it. Plaintiff shall have until Friday, August 22, 2014, in which to respond to the
> discovery (outstanding since July 9, 2014).

(Doc. 46).

Despite the Court's admonition that Plaintiff and its counsel must actively prosecute the action, Plaintiff continued to ignore outstanding discovery requests, opposing counsel, pending motions, and the Court.

On September 19, 2014, Defendant filed a motion to compel production of responsive documents (Doc. 55), noting that Plaintiff "has failed to produce any responsive documents or serve a privilege log for the purported privileged documents being withheld."  The motion noted that Plaintiff had failed to acknowledge Landmark's follow-up requests, via correspondence and email, to provide the discovery.

On October 1, Defendant moved to compel production of initial disclosures and for other relief (Doc. 56). Landmark noted that **five months** after the production deadline, Danubis still had not filed Initial Disclosures.

On October 2, 2014, Defendant moved to compel responses to Defendant's discovery requests dated August 21, 2014 (Doc. 58). Landmark's counsel represented that Plaintiff had failed to respond **at all** to Defendant's August 21, 2014 Request for Admission, Second Set of Interrogatories, and Second Request for Production of Documents.

*The Court Sanctions Plaintiff and Mr. Ambler*

In response to the three motions, the Court issued an Order to Show Cause, noting:

> To the extent Plaintiff wishes to prosecute this case, it has a duty to make disclosures, respond to discovery requests, and cooperate with defense counsel. As it has apparently not done so, the Court has reason to suspect that Plaintiff has abandoned this cause.

> Plaintiff is therefore ORDERED TO SHOW CAUSE in writing, within seven days of the date of this Order, why this action should not be dismissed for failure to prosecute. Plaintiff is cautioned that failure to timely respond to this Order may result in a recommendation that the Complaint be dismissed, without further notice.

(Doc. 59).

While awaiting Plaintiff's response to the show cause Order, Landmark filed a motion seeking a 60 day extension of time to complete its own discovery, in view of Plaintiff's lack of production (Doc. 62). The Court denied the motion, noting the pendency of the show cause Order, but:

> That said, *Plaintiff* is reminded that failure to provide discovery and cooperate in the process is not without consequence, and the Court will not hesitate to impose sanctions (which may include an award of fees and expenses in addition to dismissal of the case) to the extent Plaintiff's conduct hinders the orderly flow of discovery.

(Doc. 63 emphasis original).

Plaintiff failed to file any opposition to the three motions to compel. Plaintiff did, however, file a response to the Order to Show Cause (Doc. 68). Finding that response to be inadequate, the Court issued an Order on October 27, 2014, expressing its frustration with Plaintiff and Mr. Ambler in no uncertain terms:

> In view of allegations of Plaintiff's lack of cooperation in the discovery process raised by Defendant in these motions, the Court issued an Order to Show Cause why this action should not be dismissed for failure to prosecute (Doc. 59). The reaction from Plaintiff was mixed. Plaintiff's counsel filed a Response to the show cause Order (Doc. 68), and it also appears that Plaintiff's principal attended its deposition (Doc. 64). On the other hand, no timely opposition has been filed to any of the motions, and the Response to the show cause Order is woefully inadequate. Moreover, while it appears that Plaintiff's representative brought some responsive documents to the deposition, Defendant claims the documents were not produced. Upon review of the entire record, the Court finds Plaintiff has been dilatory in prosecuting this action, but has not abandoned it. Nonetheless, as Plaintiff has not acted in good faith and has not met its discovery obligations, sanctions are warranted.
>
> In the motions, Defendant asserts that Plaintiff has failed to make initial disclosures, has not provided documents or a privilege log, and has not responded to interrogatories nor communications from defense counsel. In its Response, Plaintiff asserts that it did not provide initial disclosures because "the Defendant was already provided all of the documents and information that complies with the initial disclosures before suit was filed." As for not providing documents or interrogatory answers, Plaintiff maintains that it included objections to Requests to Produce and thus, it did not have to produce the documents until the Court ruled on the objections. As for not responding to counsel or deadlines, Plaintiff notes that its representatives were "traveling on family business" and Plaintiff's counsel is a solo practitioner who was busy with other proceedings, which "resulted in a number of deadlines being missed in this case." Plaintiff purports to "rectify" that situation by attaching to its Response *unsigned by Plaintiff and unverified* "answers" to Defendant's second and third set of interrogatories.

The Federal Rules provide that initial disclosures under Rule 26(a) must "be in writing, signed, and served." Rule 26(a)(4), Fed. R. Civ. Procedure. Plaintiff understood this and agreed in the Case Management Report to make the "**mandatory initial disclosures**," including all correspondence between the parties, the insurance policy, and "documents supporting Plaintiff's claims," by May 2, 2014 (Doc. 32, pp. 1 and 3, emphasis added). It did not do so and has not done so, to date. In view of the mandatory nature of the disclosures and counsel's acknowledgment of his obligation to produce same, Plaintiff's current contention that it did not have to comply with its obligation is disingenuous. Regardless of whether Defendant may have copies of certain documents already, Defendant is entitled to the formal disclosure (including computation of each category of damages and witness information) in writing, signed and served. Compliance with a mandatory rule is, by definition, required.

Further, the Court is unimpressed with Plaintiff's excuses as to why it did not meet deadlines and provide the requested discovery. While it is true that some responses included objections to production of certain documents, Plaintiff failed to oppose Defendant's motion to compel production (Doc. 55) and, therefore, those objections are waived or overruled. See Local Rule 3.01(b). Moreover, Plaintiff failed to produce documents it agreed to produce and did not provide a privilege log as to documents it allegedly claims to withhold. Plaintiff's attempt to "rectify" its deficient discovery response by belatedly tendering unsworn responses to Interrogatories is similarly unavailing, as unsigned responses do not comply with the Federal Rules. See Rule 33, Fed. R. Civ. Procedure. Most importantly, the Court finds the show cause Response to be long on excuses but lacking any acceptance of responsibility for the situation. Plaintiff acknowledges that "a number of deadlines" were missed, but does not apologize for the myriad deficiencies and resulting difficulties and provides no assurance that the case will not go off the rails again, should counsel or Plaintiff have other things to do. On this showing, the Court cannot find that the numerous omissions here were made in good faith. Upon review of the Response and for the reasons set forth above, the Court finds good cause to compel discovery and good cause to sanction Plaintiff . . .

(Doc. 70, pp. 1-4).

The Court proceeded to grant the motions to compel, ordering Plaintiff to, among other things, "provide a **signed and complete** disclosure in compliance with Rule 26 within seven days of this Order" and "To the extent the motion seeks production of documents that are not already due to be produced in either the Initial Disclosure or in response to this Order regarding the motion to compel production of documents (Doc. 55), Plaintiff is **ordered** to produce them to Defendant within seven days of the date of this Order." (Doc. 70, p. 4).  Thus, all documents and disclosures relating to this matter were to be produced by Plaintiff no later than November 3, 2014.  In bold print, the Court again

advised Plaintiff that "failure to comply with the terms of this Order may result in the imposition of sanctions, which may include the striking of pleadings and dismissal of the claim." *Id.*, p. 5.  The Court also granted motion costs as to entitlement, and carried the amount of the award with the case. Additionally, the Court admonished Mr. Ambler for conduct that is below the standard of practitioners in this Court:

> Counsel has a professional responsibility to his client and this Court to meet deadlines, respond to opposing counsel, and cooperate with the discovery process. His failure to do so here has resulted in delay, added costs, and the expenditure of judicial time and effort to direct compliance with those obligations. Counsel is ethically obligated not to take on more than he can handle. If counsel is repeatedly too busy to timely respond to discovery, meet required deadlines, or communicate with opposing counsel, he is too busy. Counsel is cautioned that further derelictions of duty in this matter will result in appropriate, and unpleasant, consequences.

(Doc. 70, p. 5).

Unfortunately and inexplicably, things did not improve.

*The instant motions and even more difficulties*

On October 29, 2014, Defendant moved for a protective Order "granting LANDMARK protection from having to respond to the Plaintiff's October 7, 2014 discovery,[and from] appearing on November 7, 2014 for deposition . . ." (Doc. 72, p. 9), and on November 4, 2014, Landmark filed a motion seeking an extension of discovery and the time to file dispositive motions (Doc. 76), citing numerous irregularities in Plaintiff's discovery responses. As noted, Plaintiff appeared for its deposition but did not produce the documents that it had there that day and the witness could not answer the majority of the questions without seeing said documents.  Defendant also complained that Plaintiff's public adjuster, Blaine Vermuelen of All Systems, Inc., responded to a subpoena for records, advising that it did not have any records other than the firm's contract and a letter signed by Plaintiff's represenative stating that, on January 3, 2011, he took All System's Inc.'s original file. At the October 17, 2014 deposition of Mr. Vermuelen, however, Mr. Ambler:

requested time to meet with Mr. Vermuelen. After approximately twenty (20) minutes they returned to the conference room and Plaintiff's counsel put on the record that *he* was producing the "missing" file *which Plaintiff's representative* apparently had all the while in his *home office since before* the inception of this litigation. The file consisted of approximately 450 pages which neither the witness or Landmark had been provided before that morning. [D.E. #71 and 71-1]

(Doc. 76, p. 3 some emphasis added).

Defendant also noted that it had been "diligently searching for the contact information" for Gary Metzger, the witness who allegedly executed the Affidavit attached to the Complaint. Defendant had served an Interrogatory on Plaintiff, seeking contact information for this critical witness.  In unverified response, Plaintiff advised only:

The Plaintiff's Senior V.P. of Marketing, Mr. Radulovic, believes he may have had a cell phone number in his Blackberry smart phone for a Gary Metzer back in 2008. However, Mr. Radulovic currently has uses an iPhone and does not have access to contact the information in his old Blackberry.

(Doc. 76-2).[3]

Defendant also complained that Plaintiff's counsel, over defense counsel's objection, "utilized and marked as exhibits to Mr. MacKizer's deposition documents that have never been produced pre- or post-suit to Landmark." (Doc. 76).  Moreover, Plaintiff served discovery responses via a link to a Dropbox account that Defendant claims it could not access. *Id.*

Faced with these troubling assertions, the Court noticed a discovery conference on pending motions, and directed counsel to appear in person for the November 17, 2014 hearing.  Yet again, the Court cautioned that the Court "will not hesitate to impose sanctions on any party or counsel found to be hindering the orderly flow of discovery in this case." (Doc. 79).

---

[3]As for the location of Mr. MacKizer, the alleged tenant of the Property, Plaintiff stated:
Without waiving and subject to the objections, the Plaintiff would state as follows: The Plaintiff's Senior V.P. of Marketing, Mr. Radulovic, believes he may have had a cell phone number in his Blackberry smart phone for Richard MacKizer back in 2008. However, Mr. Radulovic currently has uses an iPhone and does not have access to contact the information in his old Blackberry.

(Doc. 83-9, p. 3).

Following issuance of the Notice, Plaintiff responded to the motions (Docs. 81, 86). While acknowledging that Plaintiff's representative brought documents to his deposition which were not produced to Defendant, Mr. Ambler states that he objected to their production as he had not yet had an opportunity to review the documents to ensure that there were no privileged documents. Importantly, Mr. Ambler states that he:

> appeared at the Rule 30(a) deposition on October 10, 2014 in Tampa, Florida with Mr. Borivoje Radulovic, the Plaintiff's corporate representative with the most knowledge as to the delineated areas for inquiry specified in the notice of taking deposition. Mr. Radulovic arrived shortly before his deposition, after driving more than 1 ½ hours from Orlando, and **brought with him all of the Plaintiff's original business records** which he was able to locate that were identified in the duces tecum portion of the notice of taking the 30(a) deposition. **These records had not previously been reviewed by Plaintiff's counsel as they had just been located and retrieved by Mr. Radulovic late the previous evening.**

(Doc. 86, p. 4 emphasis added). Mr. Ambler states that, at deposition, he "offered to take a brief recess" to review the documents, but Defendant declined to postpone the deposition (Doc. 81, p. 5).

 As for the "missing" file, Plaintiff states:

> The day before the deposition of Blaine Vermeulen, on October 16, 2014, Plaintiff's Corporate Representative, Borivoje Radulovic, attempted to retrieve a copy of the file documents from Blaine Vermeulen's office in Mt. Dora, Florida so that his counsel could prepare for Mr. Vermeulen's deposition. Mr. Radulovic drove forty-five (45) minutes to Mr. Vermeulen's office in Mt. Dora, Florida only to find, to both Mr. Radulovic and Mr. Vermeulen's surprise, that the file was not in his office but instead there was a note indicating that said file had been delivered to Mr. Radulovic almost four (4) years ago.

> []Upon learning that he had been given Mr. Vermeulen's file in January 2011, Mr. Radulovic practically ransacked his own home office and garage in search of Mr. Vermeulen's file. It was eventually located in a box unrelated to this matter entirely, for purposes irrelevant to this action.[] Mr. Radulovic brought the newly located Vermeulen file to Plaintiff's counsel's office in Tampa, Florida at approximately 8:30 p.m. on October 15, 2014, the night before Mr. Vermeulen's scheduled deposition. Plaintiff's counsel, in a gesture of professional courtesy, made a copy of Mr. Vermeulen's 400+ page file to provide to Defendant's counsel before the start of Mr. Vermeulen's deposition and the original file was returned to Mr. Vermeulen before his deposition started. At Mr. Vermeulen's deposition, Defendant's counsel not only had the original file for Mr. Vermeulen to review, but was also provided a paper copy of the entire file and a bate stamped version was sent electronically to her office via email.

*Id.,* pp. 6-7.

Mr. Ambler admits that Plaintiff's corporate principal had no contact with Gary Metzger "in over 4 years" and "the first time Plaintiff or Plaintiff's counsel received any information on the whereabouts of Gary Metzger was during the deposition of Richard Mackizer set by defense counsel at the end of October 2014." (Doc. 86, p. 13).   As for the dropbox account, Plaintiff blames a "technical glitch." *Id.,* pg. 15.

*The bombshell*

On November 16, 2014, the day before the scheduled discovery conference, Defendant filed its Motion to Dismiss Complaint for Fabrication of Evidence, Fraud Upon the Court, Egregious Discovery Practices, and for Violation of the Court's Discovery Order (Doc. 83).   The motion raised additional troubling assertions, including numerous alleged discovery violations (failure to produce responsive documents, wholesale substantive changes to deposition testimony through use of an errata sheet, etc.).   Of particular concern, however, were the assertions regarding Plaintiff's allegations as to the alleged "lease" and the identity of the alleged "tenant."

According to this motion, even though Plaintiff alleged in its complaint that Mr. Richard MacKizer was the tenant at this Property, Plaintiff claimed it had no contact information for Mr. MacKizer and did not list him as a witness.   Defendant was able to locate Mr. MacKizer through its own efforts, and subpoenaed him for deposition.   At his deposition, despite Plaintiff's prior representation that it had no contact information for Mr. MacKizer, *Plaintiff* provided documents (which were not produced previously) which contained the email address of Mr. MacKizer.   More importantly, in his deposition testimony, Mr. MacKizer *denied* the allegations that either he or Mr. Metzger were *ever* tenants at the Property.

Even more disturbing, although Plaintiff did not provide contact information as to Gary Metzger (despite the fact that Plaintiff attached an Affidavit purporting to be signed by Mr. Metzger to its Complaint):

> Landmark had the opportunity to obtain another affidavit of Mr. Gary Metzger, which according to Mr. Metzger is the truth.  Like Mr. MacKizer's testimony, Mr. Metzger unequivocally swears that the Metzger June Affidavit and the allegations in the Complaint are fraudulent. Mr. Metzger also unequivocally swears that his signature was forged by someone.

Doc. 83, p. 10; Doc. 83-13 (Nov. 14, 2014 Affidavit of Gary Metzger).

At the previously scheduled discovery conference, the Court addressed the remarkable accusations made in the motion and scheduled an evidentiary hearing (Doc. 87).  Due to the serious nature of the accusations and the likelihood that significant consequences would follow findings of misconduct, the Court undertook to advise counsel, the parties, and all witnesses that the Court would act in accordance with its full authority.  The Notice of Hearing provided:

> **TAKE NOTICE** that an evidentiary hearing on the matters raised in the Motion to Dismiss Complaint for Fabrication of Evidence, Fraud Upon the Court, Egregious Discovery Practices and Violation of Court's Discovery Order (Doc. 83) will be held before the undersigned on **WEDNESDAY**, **DECEMBER 10, 2014** at **10:00 A.M.** in Courtroom #6D, U.S. Courthouse, 401 W. Central Boulevard, Orlando, Florida. The parties and counsel are on notice that all bases for the Court's authority are in consideration, including: Rule 11 and other rules of the Federal Rules of Civil Procedure; Titles 18 and 26 United States Code; the Court's inherent and contempt powers; and the Rules Governing Members of the Florida Bar and the Bar of this Court.
> **Counsel are directed to confer in good faith in order to locate and subpoena (if necessary) all relevant witnesses to testify at the hearing, including both notaries, Mr. Gary Metzger, Mr. Richard MacKizer, Plaintiff's representative Borivoje Radulovic,** and any other witness with relevant information to the issues raised in this motion.  Counsel are directed to inform any witnesses of their right to be represented by an attorney at the hearing. As discussed at hearing, all original Affidavits are to be produced.
> Due to the nature of the issues raised in the motion and considering the possible personal and professional consequences that may result from a finding that fraud was committed in this case, the potential that counsel may, themselves, be called upon to testify, and the possibility of conflicts arising between client and counsel, **counsel are advised to consider the appropriateness of having separate representation at the hearing and whether their clients may need independent representation.**

> To the extent the evidence supports a finding that a party, a witness or counsel has violated the Federal Rules of Civil Procedure or any Order of this Court, appropriate sanctions will be considered and imposed, which may include striking of pleadings and/or the imposition of monetary or other sanctions. **All parties and counsel are further advised** that, should the evidence support a finding that any party, witness or counsel participated in any way in the perpetration of a fraud in this matter, the Court will consider the full measure of sanctions available, including, if appropriate, referral to the United States Attorney or other appropriate authorities for investigation and/or prosecution.

(Doc. 88). Affidavits and exhibits were filed (Docs. 89-93, 95-101) and Plaintiff filed its response brief (Doc. 94).

*The evidentiary hearing*

The Court held a three day evidentiary hearing (Docs. 102, 104, 106), during which, the Court heard testimony from a variety of witnesses, including:

1.  Gary Metzger – Mr. Metzger testified that he knew Plaintiff's principal and had looked at the Property, but "nothing came of it" and he "never, ever had a lease agreement" for the Property. Metzger confirmed the accuracy of the representations in his November 2014 Affidavit, testified that he did not recall executing the June 2010 Affidavit (affidavit attached to the Complaint) and stated that there is no truth to the representations in the June 2010 Affidavit. Mr. Metzger also testified that he was not contacted by Mr. Ambler to confirm the matters in the June 2010 Affidavit at any time prior to the filing of the Complaint.

2.  Michele Dioguardo-Egret – Ms. Dioguardo-Egret testified that she and a partner were the owners of M and M Comedy Enterprises, LLC, which, pursuant to a written lease, operated Belly Buster's Comedy Club at the Property until June 2009. The club had a full liquor license. This witness testified that she closed the doors in June or July 2009, after her partner left, and formally dissolved the company in October 2009. Contrary to representations in her Affidavit (Doc. 92) that "this new group came in and began making changes," she testified that she really "doesn't know exactly what happened."

3.   Richard MacKizer – Mr. MacKizer testified that, contrary to the allegations of the Complaint, he did not enter into any lease agreement, oral or written, for this Property; nor did he have any agreement to lease the Property in the future.  He testified that he never performed any renovations or repairs, never pulled permits, never had keys.  His involvement was solely as a consultant who viewed the Property with Mr. Metzger, and was not impressed with it.  Mr. MacKizer was not contacted by Mr. Ambler or Plaintiff in order to confirm the allegations of his tenancy at any time prior to the filing of the Complaint.

4. Matthew Medina – Mr. Medina is a notary public.  He did not recognize Mr. Metzger in Court, but confirmed that his log establishes that Mr. Metzger appeared and executed the November 2014 Affidavit.

5.   Charles Giannetto – Mr. Giannetto is an attorney licensed in Minnesota and Indiana, but not in Florida.  He testified that, in September 2009, as a personal favor to his friend,  Plaintiff's principal, Borivoje Radulovic, he contacted Orlando Attorney Brian Herzig (whom he did not know) and asked him to confirm that his firm was holding $100,000 in escrow for the lease of the Property. The witness testified that Mr. Herzig, without asking for and in the absence of any authorization from the supposed client (Metzger), nonetheless readily confirmed to this unknown caller that, indeed, the firm was holding the funds in escrow.  On cross examination, Mr. Giannetto  acknowledged that he never saw any proof that such an account existed, did not ask to see the escrow agreement (if any), and did not inquire as to the terms of any such escrow.[4]

---

[4]Defendant has filed the Affidavit of Attorney Grey Squires-Binford, who attests that Brian Herzig was employed by the Killgore Firm from May 25, 2006 through October 16, 2009, and "the Killgore Firm, at no time held in escrow $100,000.00 related to any transaction related to property located at 1870 N. Semoran Blvd., Winter Park, Florida 32792 for a client by the name of Gary Metzger. In fact, the Killgore Firm has no record of a client by the name of Gary Metzger." (Doc. 97-1).  The Court takes judicial notice of the fact that Mr. Herzig was disbarred in February 2013, arising from unrelated misconduct.

6.  Shirley Felderman - Ms. Felderman is a notary public.  She did not recognize Mr. Metzger in court, but confirmed that her log establishes that Mr. Metzger appeared and executed the June 2010 Affidavit.

7.  Michael Weller – Mr. Weller is an independent claims adjuster who was working on this claim on behalf of Landmark. He testified that he met with the Public Adjuster, Blaine Vermuelen, and with Mr. Radulovic in the course of adjusting the claim.  Although he testified that he met with someone whom he thought was Mr. Metzger in a meeting at Mt. Dora (in which Metzger claimed to seek reimbursement for his own losses regarding the Property), he did not recognize Mr. Metzger in Court and, in response to the Court's inquiry as to how he knew that it was Mr. Metzger that he had met with, Mr. Weller replied: "I don't know if it was him."

8.  Borivoje Radulovic – Mr. Radulovic was Plaintiff's principal.  He testified that he did not read the Complaint before it was filed.  He also stated that he provided Mr. Ambler "whatever information I had on hand at the time" to put in the complaint.

With respect to the merits, Mr. Radulovic testified that Mr. Metzger approached him in early September 2009, for the purposes of leasing the Property to open a Green Iguana concept restaurant/bar, along with his "partner and investors," to include Attorney Herzig. Mr. Radulovic confirmed that there was no written lease agreement, because "we were concentrating on forming the partnership with the, LLC and I wanted to see if I was going to make that decision whether to join the group as an equity partner in addition to being a landlord."  Mr. Radulovic said that he nevertheless gave Metzger the keys and Metzger "agreed to begin renovations and to start paying rent November 1." Then, in mid-October 2009, the theft and vandalism (which is the subject of the insurance claim at issue) occurred and, when promptly notified of same, Mr. Metzger told Mr. Radulovic that he was not going to continue with the plans he had for the Property and, in *November,* he returned the keys. Mr. Radulovic testified at hearing that he has since recalled being present when Mr. Metzger signed

the June 2010 Affidavit, which states that keys were returned in mid-*December.* When asked at hearing about the discrepancy, Mr. Radulovic stated: "I didn't prepare the complaint. My lawyer did."

Mr. Radulovic acknowledged that, contrary to his deposition testimony where he testified that he did not know who prepared the Metzger Affidavit, "me and my daughter" prepared the June 2010 Affidavit submitted to Metzger. With respect to the November 2014 Affidavit, Mr. Radulovic states Mr. Metzger is "lying" or "mentally ill."  Nonetheless, Mr. Radulovic confirmed that Plaintiff is relying on Mr. Metzger's sworn statement as part of its claim, even though he thinks Mr. Metzger is lying or is mentally ill. When asked why Mr. Metzger would recant the June 2010 Affidavit, Mr. Radulovic stated: "Spite, because I didn't agree to give him a kickback from what I received from the insurance company."

9.  Blaine Vermeulen – Mr. Vermeulen was the Public Adjuster Plaintiff hired following the October 2009 vandalism/theft at the Property.  Mr. Vermeulen testified that he met Mr. Metzger in November 2009, at the Property.  His testimony was mostly consistent with his Affidavit (Doc. 91), except that he testified that he did not see any renovations being done on the property and he thought the lost rent claim was at most a two or three month loss of rent.

10.  Mioratag Radulovic – This witness, the father of Borivoje Radulovic, testified, in very confusing fashion, that Mr. Metzger promised to pay him for his services as a handyman at the Property.

*New documents are "discovered" by Plaintiff*

During the course of his examination of his client on the third day of the evidentiary hearing, Mr. Ambler attempted to introduce a packet of documents which Plaintiff had failed to produce at any time prior to the start of the hearing.  According to Mr. Ambler, he instructed his client to go through "hundreds of boxes in his garage" and "he located some documents over the weekend." When the

Court inquired if there was a reason the documents were not produced in the Rule 26 disclosures, Mr. Ambler replied that he did not know about them, even though they were in his client's possession. According to Mr. Ambler: his client has "done his best to produce what he thought up until now were the relevant things on a fairly small insurance claim that occurred on October 18," and he "just" found more documents. Defendant objected to the use of any documents not previously produced.

After the conclusion of the evidence, the following occurred:

THE COURT: Do you want to testify?

MR. AMBLER: Do I want to testify?

THE COURT: Yes, sir.

MR. AMBLER: If the Court would --

THE COURT: I don't care. But we've gotta dispute between attorneys about how things were handled.

MR. AMBLER: Yes, sir.

THE COURT: And you drafted a number of affidavits that are [illegible] here.

MR. AMBLER: Yes, sir.

THE COURT: And I gave warning in the notice that I might want to hear from him.

It's up to you. It's up to Miss Levy [to] make her record.

Upon hearing that Mr. Ambler did wish to testify and, noting that defense counsel did not call him as a witness, the Court granted leave for Mr. Ambler to submit an affidavit "by December 19, 2014," with his version of the events that pertain to the evidence, and directed both parties to file proposed findings and supplemental briefing on the issues based on the evidentiary record developed at hearing (Doc. 106 – Court minutes).

Mr. Ambler filed his Affidavit three times – one version, without any exhibits, was timely filed on December 19 (Doc. 110); the two latter versions, with attached exhibits (Docs. 111 and112)

were (not surprisingly) filed *after* the deadline and, as such, are not considered by the Court.  As for the substance of the Affidavit, Mr. Ambler acknowledges, in pertinent part, that "it appears that I did make an unintended inadvertent clerical mistake" in the general allegations contained in the original Complaint, but "to the best of my knowledge and belief, I have never knowingly or intentionally filed, submitted or otherwise tendered any false or misleading evidence to the court." (Doc. 110).  Mr. Ambler avers that "to the best of his knowledge and belief" neither he nor any of the officers or managing members of Plaintiff ever "knowingly or intentionally fabricated or falsified any evidence." *Id.* Plaintiff has also filed proposed findings of fact and conclusions of law (Doc. 115).

Landmark moved to strike Plaintiff's original response brief (Doc. 94) as "riddled with false allegations directed toward Defendant and its counsel." (Doc. 113).  That motion is opposed by Plaintiff (Doc. 116).  Landmark filed a supplemental brief to its Motion to Dismiss, which included Proposed Findings of Fact and Conclusions of Law and incorporated a Motion to Enter Final Judgment pursuant to Federal Rule of Civil Procedure 56(f) (Doc. 114).  A Motion to amend the supplemental brief to correct a scrivener's error was also filed (Doc. 117).  It appears that Plaintiff has filed a response to that motion (Doc. 118), but the response deals solely with the scrivener's error issue and does not address the merits of the motion to enter final judgment.[5]

Against this exceptional background, the Court makes the following findings of fact and conclusions of law.

## II.  Standards of Law

The sources of the Court's authority to impose sanctions are many.  The Court has the inherent power to sanction parties, lawyers, or both for engaging in conduct that abuses the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). The inherent power of the Court can be invoked even if procedural rules exist which sanction the same conduct.

---

[5]The Clerk is directed to correct the docket to reflect that Doc. 118 is a response to the motion at Doc. 117.

The Court's inherent powers include the power to control and discipline attorneys appearing before the Court, and to suspend attorneys who practice before the Court.

Counsel who unreasonably and vexatiously multiply the proceedings in any case may be sanctioned under 28 U.S.C. §1927. "[A]n attorney's conduct must be particularly egregious to warrant the imposition of sanctions–the attorney must *knowingly* or *recklessly* pursue a frivolous claim or needlessly obstruct the litigation of a non-frivolous claim. *Amlong & Amlong v. Denny's, Inc.*, 500 F.3d 1230, 1242 (11th Cir. 2007).

The Federal Rules of Civil Procedure provide for sanctions in appropriate cases. Federal Rule 37(b) provides, in pertinent part:

> If a party or a party's officer, director, or managing agent–a witness designated under Rule 30(b)(6) or 31(a)(4)–fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed.R.Civ.P. 37(b)(2)(A). *See also* Rule 16(f) (incorporating the Rule 37(b)(2)(A) sanctions if a party or its attorney "fails to obey a scheduling or other pretrial order.")

Rule 11(b) of the Federal Rules of Civil Procedure states, in pertinent part:

> By presenting to the court a pleading, written motion, or other paper, ... an attorney ... certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: ...
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery....

As Judge Presnell has noted:

The purpose of sanctions under Fed R. Civ. P. 11 is to "reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers." *Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir.2001). In considering a motion for sanctions a court generally conducts a two-step inquiry: (1) whether the party's claims are objectively frivolous in view of the facts or law; and (2) whether the person who signed the pleadings should have been aware that they were frivolous, in other words, whether he would have been aware had he made a reasonable inquiry. *Byrne v. Nezhat*, 261 F.3d 1075, 1105 (11th Cir.2001); *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir.1996). When sanctions are initiation *sua sponte*, a higher standard applies such that a court should not impose sanctions unless an offender's conduct is "akin to contempt." *Kaplan v. Daimlerchrysler, A. G.*, 331 F.3d 1251, 1255 (11th Cir.2003); *see also Hodge v. Orlando Util. Comm'n*, 2010 WL 376019, *3 (M.D.Fla. Jan.25, 2010). ***

It is clear, however, that "[m]ere negligence or ignorance of the facts or law, without more, is not sufficient." *Id.* (citing *Schwartz v. Million Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir.2003); *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir.1998)). "On the other hand, making a knowingly false statement or exhibiting deliberate indifference to obvious facts is akin to contempt and warrants *sua sponte* Rule 11 sanctions." *Riccard*, 307 F.3d at 1294.

*Gehl v. Direct Transport, Ltd.*, No. 6:12-cv-1869-Orl-31DAB, 2013 WL 424300, at *1-2 (M.D.Fla. Feb.4, 2013).  Procedurally, court-initiated sanctions under Rule 11(c)(1)(B) do not involve the "safe harbor" provision contained in Rule 11(c)(1)(A). Because no safe harbor opportunity exists to withdraw or correct a submission challenged in a court-initiated proceeding, "[t]he initiating court must employ (1) a "show-cause" order to provide notice and an opportunity to be heard; and (2) a higher standard ("akin to contempt") than in the case of party-initiated sanctions." *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003).

## III.  Findings of Fact and Conclusions of Law

The heart of this Complaint is the alleged lease between Plaintiff and *MacKizer.* As discussed more fully below, the Court finds no such lease ever existed and this claim is not viable as a matter

of law.  To the extent Plaintiff attempts to rely on a purported lease between Plaintiff and *Metzger,* the Court finds no such lease existed and such a claim is not viable as a matter of law.

*The Metzger Affidavits and the False Claim of Leasehold*

In the Complaint, Plaintiff bases its claim on the June 2010 Affidavit of Gary Metzger, attached to the Complaint.  Based upon the evidence at hearing, the Court finds the June 2010 Affidavit of Gary Metzger to be a sham.  Mr. Metzger signed it, but the evidence proves conclusively that the averments of the Affidavit are untrue, and Metzger knew it.

The Court also finds the November 2014 Affidavit to be a sham to the extent Mr. Metzger swears he  did not execute the June 2010 Affidavit, and accurate, to the extent Mr. Metzger correctly acknowledges the falsity of the averments of the June 2010 Affidavit and the falsity of the allegations of the Complaint.

The evidence supports a finding that Radulovic and Metzger had preliminary talks about a possible lease or partnership at the Property, but no meeting of the minds ever occurred as to the terms of this potential arrangement[6] and nothing – no lease, no escrow, no partnership agreement – was ever executed.[7]  To the extent Plaintiff claims that it had an "oral" five year lease with Mr. Metzger, even if Plaintiff could somehow surmount the legal hurdles imposed by state law (statute of frauds, regulation of liquor licenses, etc.), the uncontradicted evidence is that Metzger was never charged for (and did not pay) "rent" and never paid a dime for utilities, deposits, insurance, or other indicia of tenancy.[8]  To the extent Plaintiff claims a "month to month" oral lease, even if the Court believed

---

[6]As Mr. Radulovic testified: "We didn't discuss every single aspect. We concentrated on trying to get the LLC in place."

[7]By contrast, Belly Buster's operated pursuant to a written lease.  Moreover, Mr. Radulovic testified that there was a written use and occupancy agreement executed by Plaintiff in connection with a *four day* "trial run" with an earlier potential tenant.

[8]Even if the Court were to believe that Radulovic gave Metzger a copy of the keys, absent more, this creates no more rights than a consensual permissive use, akin to a car salesman tendering the keys for a test drive. You may have the keys, but you sure don't own the car until you sign the paperwork.

there was such an agreement (which it does not), Plaintiff testified that the October 18, 2009 vandalism rendered the Property "unusable" for restaurant purposes so Metzger abandoned any plans for it.  As such, any "at will" interest was terminated in October, with zero rent owed.  Any five year lease between these two parties is illusory.[9]

The evidence compellingly indicates that Mr. Radulovic colluded with Metzger in an attempt to convert their potential business relationship into an existing lease and convince the insurance company that there was a claim for loss of rent. When Radulovic did not cooperate with a "kickback," Metzger recanted.  Based on the evidence at hearing, no reasonable fact-finder could find Mr. Metzger to be a credible witness.[10] Indeed, under the circumstances shown here, he would not be permitted to testify. To the extent the Complaint is largely premised on the non-existent lease,[11] it is not cognizable, and never was.

*The Effect of the False Claim*

As set forth in detail above, the false claim pervaded the litigation and had a significant effect on Defendant and defense counsel.  This was not a minor misstatement or omitted detail; this was an affirmative representation as to the grounds of the claim. Faced with a claim that there was, in fact, a lease interest and absent any witness contact information, production of documents or Rule 26 disclosures as to the particulars, Defendant was left to its own devices to attempt to define the claim in the first instance.  Worse, Plaintiff's counsel was uncooperative in the extreme, prolonging this

---

[9]Notably, Plaintiff's own claim adjuster disregarded any issues as to whether there was a five year lease because, contrary to the claim set forth in Plaintiff's Complaint, any damages for loss of use would be limited to the time needed for repairs.

[10]While the Court finds Mr. Metzger to be a stranger to the concept of veracity, it does not recommend referral of these matters to the prosecutor.  While Mr. Metzger clearly executed false Affidavits, he did not tender either Affidavit to the Court, is not a party to the proceedings, appeared at hearing only under subpoena, and, as far as the Court can tell, gains nothing from the havoc he has wrought, save, perhaps, some perverse satisfaction. While the Court finds that he was less than fully truthful under oath, the Court cannot characterize his propensity towards perjury as an attempt to defraud the Court.

[11]The Complaint also generally references an "unpaid portion of Plaintiff's equipment loss according to proof at trial. . . " (Doc. 4, p. 7), but this allegation, which is not presented as a separate claim, is so vague as to be all but meaningless.

long hike down a false trail and causing copious amounts of difficulty along the way. The claim may have been false, but its effect on Defendant, defense counsel, and the Court was very real. The Court now turns to its findings as to that effect.

*Mr. Ambler violated Rule 11*

The Complaint contains numerous allegations which are objectively frivolous and, in making these false statements, Mr. Ambler displayed a deliberate indifference to obvious facts.

The Complaint alleges that: "On September 16, 2009, the Property was being leased by Plaintiff to a new tenant, Richard MacKizer on a month to month basis while renovations were being performed on the property to adapt it to the tenant's requirements for its business and a long term lease was entered into for a period of five (5) years with a monthly lease payment of $8,500.00 commencing on November 1, 2009. The tenant for the Property, Mr. MacKizer, was in the process of renovations to the Property to open his restaurant, Belly Buster . . .". The Complaint also alleges that "as a direct result of the theft and vandalism to the Property, Mr MacKizer surrendered possession of the Property to Plaintiff in mid-December, 2009." As shown at hearing, these allegations have no evidentiary support.

There is no factual basis to assert that the Property was being "leased to Mr. MacKizer" for any purpose (nor that he had a restaurant named Belly Buster) and no basis to assert that "a long term lease was entered into" on September 16 by *anyone*.[12] Mr. MacKizer never surrendered possession of the Property, because he never had possession. Moreover, even if the Court were to accept that

---

[12] The Court rejected Mr. Ambler's belated attempt to "amend" the Complaint "to correct scrivener's error." (Doc. 103). The misrepresentations here are not typographical errors. Moreover, the evidence at trial established conclusively that no long term lease on these terms was "entered into" by Plaintiff in September. The testimony was unanimous that a long term lease of a bar under these circumstances would be in writing. No monies were ever shown to be paid by Metzger or MacKizer for rent, utilities, renovations or any other expenditure relating to any supposed tenancy at the Property. Indeed, even *Plaintiff's* Proposed findings of fact acknowledge: "Mr. Radulovic testified that his understanding was that Metzger's group *would* draft the operating agreement for the new limited liability company to serve as the business operator on the premises; and there *would be* a written lease agreement prepared as well, for $8500 per month, triple net, for a five year term, with several options to renew." (Doc. 115, para. 29). There is no evidence that such agreements were ever prepared or executed.

Metzger had possession of the keys (a conclusion the Court does not and need not make), *Plaintiff's* representative testified that the keys were returned in November, not December.[13]

While the Court does not find that Mr. Ambler *knew* he was misrepresenting the truth when he drafted the Complaint, it is plain that Mr. Ambler *did not care* whether the allegations were true or not. The record shows that counsel did not perform even the most perfunctory of investigations prior to filing his Complaint. He did not speak to Mr. MacKizer or Mr. Metzger, despite making affirmative allegations about their connection to the Property; he did not review the Public Adjuster's file or his own client's files (as they were only first "discovered" well into the litigation); and, indeed, he did not even obtain his client's review of the Complaint before it was filed. It appears, at best, that Mr. Ambler took a few spotty and self-serving conclusions of his client as gospel, attached a copy of an Affidavit drafted by his client and signed by a man Plaintiff contends is a liar, and threw together a complaint, perhaps with the hope that Defendant would settle. The Court finds this to be objectively and subjectively unreasonable. By failing in his obligation to investigate the claim, Mr. Ambler forfeits the right to claim a lack of knowledge of facts he could and should have readily discovered.

Mr. Ambler's reckless disregard for the truth of his allegations did not stop at the pleading stage. When defense counsel disputed his account of a tenancy and sought contact information from the supposed tenants, Mr. Ambler made no effort to locate Mr. Metzger or Mr. MacKizer to confirm the allegations, and did not assist (and arguably hindered) Defendant's efforts to find them.[14] Also, Mr. Ambler drafted the Affidavit of Ms. Dioguardo-Egret for her signature and included conclusions she recanted at hearing. Additionally, while there is no evidence that Mr. Ambler colluded in tendering a *knowingly* false Affidavit of Mr. Metzger, the Court is unimpressed with his averments

---

[13]According to Mr. Radulovic, the October 18, 2009 loss rendered the Property "unusable" until repairs were made. Plaintiff also testified that, upon being informed of the loss, Mr. Metzger refused to incur that expense, and advised that he would not proceed with the project. Further, no rent was tendered November 1, 2009. If these assertions are true, Plaintiff's allegation that the keys were not returned until December is not credible and legally irrelevant.

[14]As set forth above, Plaintiff did not timely produce documents which contained Mr. MacKizer's email address.

that "to the best of [his] knowledge and belief" he did not "intentionally" make any misrepresentations.[15] It is clear from the foregoing that he had no basis upon which to form any belief or intention as to the truth of the matters alleged as he never performed the required pre-suit investigation.

The Court gave notice that Rule 11 sanctions were among those being considered (Doc. 88) and held an extensive evidentiary hearing. The Court also allowed and considered additional submissions. The procedural requirements for *sua sponte* imposition of sanctions have been met and the imposition of Rule 11 sanctions is warranted.

*Plaintiff and its counsel, Mr. Ambler, failed to obey Court orders*

As detailed above, the record shows an unmistakable pattern of failing to adhere to Court orders. Mr. Ambler was ordered to provide jurisdictional discovery by February 13, 2014 (Doc. 16). He did not do so. Plaintiff was ordered in the Case Management and Scheduling Order to provide Rule 26 disclosures by May 2 (Doc. 36). It did not do so. Plaintiff was ordered to provide all documents by November 3 (Doc. 70). As shown by the production of additional documents at the evidentiary hearing in December, Plaintiff failed to do so. There is no showing that these failures were due to simple negligence, misunderstanding, or an inability to comply. Rather, it appears that Plaintiff and counsel had access to the relevant documents, but did not think compliance was necessary as they believed this to be merely a "fairly small insurance claim." Sanctions under Rule 16(f) and Rule 37(b) are appropriate.

*Mr. Ambler unreasonably and vexatiously multiplied these proceedings*

As is clear from the foregoing history, Mr. Ambler multiplied these proceedings every chance he got. From the initial foot-dragging on the jurisdictional issues (resulting in a two month delay at

---

[15]With respect to the two Metzger Affidavits, Mr. Ambler argues that: "Since the second affidavit completely disavows not only the content but also the authenticity of the first affidavit, it is self-evident that both cannot be true; and, therefore the question which the Court must determine is which affidavit is not true." (Doc. 115, paragraph 12). The Court rejects this premise. The evidence supports a finding that *neither* Affidavit is "true."

the onset of the case) to failing to provide documents until the final day of the evidentiary hearing,

Mr. Ambler has displayed an attitude of disregard for the rules of this Court and his professional

obligations. The record is rife with examples of Mr. Ambler failing to respond to counsel's inquiries[16]

or discovery requests, failing to timely produce records[17] (or even timely acknowledge the existence

of such records), and failure to provide required disclosures.  These omissions resulted in significant

extra work for defense counsel and significant extra proceedings for the Court, including resolution

of multiple motions to compel (many of which Plaintiff ignored) and three hearings.  Sanctions are

warranted.

## IV. Formulating the sanction

As the Eleventh Circuit has observed:

"[T]he selection of the type of sanction to be imposed lies with the district court's sound exercise of discretion." *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1295 (11th Cir. 2002). However, the court's discretion to impose sanctions is not unrestricted, in that the sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed.R.Civ.P. 11(c)(4). Likewise, "[t]he conduct and resources of the party to be sanctioned are relevant to the determination of the amount of sanctions to be imposed." *Baker v. Alderman*, 158 F.3d 516, 528 (11th Cir.1998) (citation omitted). Specifically, we should consider the following factors in determining an appropriate sanction: (1) "[w]hether the improper conduct was willful, or negligent;" (2) "whether it was part of a pattern of activity, or an isolated event;" (3) "whether it infected the entire pleading, or only one particular count or defense;" (4) "whether the person has engaged in similar conduct in other litigation;" (5) "whether it was intended to injure;" (6) "what effect it had on the litigation process in time or expense;" (7) "whether the responsible person is trained in the law;" (8) "what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case;"and (9) "what amount is needed to deter similar activity by other litigants." Fed.R.Civ.P. 11, advisory committee notes (1993 Amendments).

---

[16]Indeed, the latest filing from Mr. Ambler is instructive.  Noting that defense counsel certified that she attempted to confer with Mr. Ambler on January 7, 2015 and January 11, 2015, prior to filing a motion, Mr. Ambler complains: "However, these attempts were only made via email; and, Defendant made no representation in its motion as to having any knowledge whether Plaintiff's counsel received or reviewed the email correspondence. As it turns out, Plaintiff's counsel did not see those emails until Defendant had already filed its motion on January 12, 2015, which was **one** day after its second attempt to confer." (Doc. 118, p. 5).

[17]The Court does not consider tendering hundreds of pages of documents to opposing counsel at the start of a deposition to be an appropriate and timely production.

*McDonald v. Emory Healthcare Eye Ctr.*, 391 Fed. Appx. 851, 853 (11th Cir. 2010).

As for sanctions under Rule 37 or Rule 16, the Court is mindful that it should consider lesser

sanctions first.

> Because dismissal with prejudice is a drastic sanction, a district court may implement
> it only as a last resort, when a party's failure to comply with a court order is a result
> of willfulness or bad faith and lesser sanctions would not suffice. *Malautea v. Suzuki
> Motor Co.*, 987 F.2d 1536, 1542 (11th Cir.1993). Nonetheless, if a party disregards an
> order despite being warned of the possible consequences, dismissal is generally not
> an abuse of discretion. *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir.1989).

*Zow v. Regions Fin. Corp.*, No. 14-11769, 2014 WL 6981070, at *1 (11th Cir. Dec. 11, 2014)
(unpublished).

In considering the Rule 11 factors, the Court finds that the conduct displayed a deliberate

indifference to obvious facts and did not occur in isolation, but was simply the beginning of a pattern

of misconduct, including failure to respond to discovery requests, failure to comply with discovery

obligations under Rule 26, failure to reply to motions, and repeated failure to comply with discovery

and scheduling orders. The baseless allegations infected the entire pleading, and multiplied the

subsequent proceedings. The Court does not know whether it was intended to injure, but that was its

effect. Mr. Ambler put forth a baseless claim that he did not bother to investigate, and stubbornly

stuck to it in the absence of any supporting evidence.[18]

As for sanctions for discovery abuse, the Court has already imposed lesser sanctions to no

effect. The Court has admonished counsel repeatedly and has made a finding that counsel has not

acted in good faith. The Court has granted motions to compel, and imposed monetary sanctions in

accordance with those motions. The Court has warned Plaintiff and counsel *eight times* that failure

to comply with obligations in this matter would not be tolerated and *would* result in consequences.

Despite all of this effort, Plaintiff continues to provide discovery only when and as it sees fit (as

evidenced by the production tendered on the third day of the evidentiary hearing). Under these

---

[18]Although the Complaint was originally filed in state court, upon removal, Mr. Ambler continued to maintain the
allegations presented therein to this Court.

circumstances, the Court has no assurance that its discovery Orders have been fully complied with, or would ever be fully complied with.

Considering the totality of the record, the Court finds that Plaintiff and Mr. Ambler have acted in bad faith and the prejudice to Defendant is self-evident and substantial. The Court finds no lesser sanction is appropriate and dismissal is warranted.[19]  It is **respectfully recommended** that the Complaint be **dismissed** as untenable on the merits and as a sanction**.**  Should this recommendation be adopted, this would moot Defendant's counterclaim.

In addition to dismissal, the Court finds that the circumstances present here justify the imposition of monetary sanctions on both Plaintiff and Mr. Ambler.  There is, however, no factual basis before the Court sufficient to formulate the amount of any such sanctions (which are to be tied to the misconduct), nor is there a foundation for determining how much of the sanction falls on Mr. Ambler's shoulders and how much on Plaintiff's.  The Court has already granted entitlement to motion costs, in connection with the three motions to compel.  At the very least, motion costs as to the instant motion and evidentiary hearing are appropriate.  Should the District Court agree, Defendant should be given leave to move for a specific formulation and to file such Affidavits, time sheets or other evidence necessary to support it.  It is **respectfully recommended** that monetary sanctions be imposed on Plaintiff and Plaintiff's counsel, in an amount to be determined in the District Judge's discretion,  after consideration of any such motion and any responses to the filing.

A final word is in order.  The Court takes no satisfaction in the chastisement of lawyers or litigants who appear before it, as evidenced by the Court's numerous attempts to persuade Plaintiff and its counsel to take their obligations in this matter seriously. That said, if the rules and orders of the Court are to mean anything the Court must be willing to defend its authority and preserve the

---

[19]As an additional basis for dismissing the case, the Court finds the conduct of Plaintiff and its counsel, considered *in toto*, to be so objectionable as to warrant dismissal under the inherent authority of the Court.

integrity of the judicial process by whatever means are necessary.  The conduct of Plaintiff and its counsel have shown that the extraordinary measures recommended here are, unfortunately, necessary.

## V. Conclusion

As set forth above, it is **respectfully recommended** that the District Court:

1) Grant the Motion to Dismiss (Doc. No. 83), in part; dismiss the Complaint, find the Counterclaim to be moot, and award motion fees and costs to Defendant, in an amount to be determined upon proper motion;

2) Grant the Motion to Invoke Inherent Power To Enter Final Judgment (Doc. No. 114), to the extent it seeks dismissal of the Complaint;

3) Deny the Motion to Strike Plaintiff's response (Doc. No. 113); and

4) Deny the Motion for Protective Order (Doc. No. 72), Motion for Enlargement of Time to Complete Discovery (Doc. 76) and the Motion to Amend Supplemental Brief (Doc. No. 177) as moot.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on January 27, 2015.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy