# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DANUBIS GROUP, LLC,**

**Plaintiff,**

**-vs-**                                                    **Case No.  6:14-cv-32-Orl-37DAB**

**LANDMARK AMERICAN INS. CO.,**

**Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration with oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **VERIFIED MOTION FOR ATTORNEY FEES, COSTS AND EXPENSES (Doc. No. 134)** |
| **FILED:** | **April 3, 2015** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part.

*I. Background*

The instant motion pertains to a complex and disappointing history of poor lawyering and other misconduct set forth in exhaustive detail in a prior Report (herein "the Report") (Doc. 119). That Report (with the recommendations contained therein) was adopted on March 5, 2015, upon close review and absent timely objection,[1] as the opinion of the District Court (Doc. 128).  Accepting the recommendation of the undersigned, the District Judge dismissed the Complaint with prejudice and ordered as follows:

_____

[1]Following the issuance of the Order adopting the Report and Recommendations, Plaintiff ("Danubis"), through its counsel ("Mr. Ambler"), filed objections to the Report (Doc. 130).  The Objections were stricken by the District Judge, as untimely (Doc. 139).

5. After notice (Doc. 88), the Court exercises its authority to *sua sponte* require Plaintiff and his counsel to pay the reasonable attorneys' fees and costs incurred by Defendant in preparing and filing the Motion to Dismiss (Doc. 83) and in attending and presenting evidence at the evidentiary hearing before U.S. Magistrate Judge David A. Baker (Docs. 102, 104, 106).

6. On or before March 27, 2015, Defendant shall file its request (not to exceed fifteen pages) for the attorney's fees and costs awarded in Paragraph 5. Defendant shall include in its request any arguments concerning the amount of sanctions that should be paid by Plaintiff's counsel in particular. Defendant also shall file any necessary evidence to support its request (which shall not count toward the page limitation for Defendant's request).

7. Pursuant to 28 U.S.C. § 636(b)(3), U.S. Magistrate Judge David A. Baker is assigned to: (a) consider any request for attorney's fees and costs filed by Defendant in accordance with Paragraph 6; (b) order responsive briefing and conduct necessary evidentiary hearings (if any); and (c) file proposed findings of fact and recommendations concerning the amount of attorney's fees and costs the Court should require Plaintiff and his counsel to pay (respectively) as sanctions imposed by this Order.

(Doc. 128).

On March 25, 2015, Defendant ("Landmark") filed an unopposed motion to extend the deadline for filing its motion for fees and costs to April 6, 2015 (Doc. 131), which the Court granted (Doc. 139).

On April 2, 2015, Landmark filed a Notice of Filing August 28, 2014 Offer of Judgment/Proposal for Settlement (Doc. 132). The Offer of Judgment/Proposal of Settlement (herein "the Offer") purported to be filed "pursuant to Rule 68 of the Federal Rules of Civil Procedure, §768.79 of Florida Statutes and Fla.R.Civ.P.1.442." In the Offer, Landmark proposed payment of "Two Thousand Five Hundred Dollars and no/00 cents ($2,500.00) . . . in full and complete settlement of the claim of DANUBIS GROUP, LLC., arising out of the facts, damages, and claims alleged in the Complaint as well as any contractual or extra-contractual damages. This offer is inclusive of interest, attorneys' fees, paralegal fees, and litigation costs." The payment was to be "in exchange for Plaintiff, DANUBIS GROUP, LLC.'s filing a Voluntary Dismissal With Prejudice of the Complaint

and all claims asserted by these parties against one another. . . ." An unexecuted Release and Settlement Agreement was incorporated and attached to the Filing (Doc. 132-1).

On April 2, 2015, Plaintiff, through Mr. Ambler, filed a Motion for Reconsideration and Relief under Rule 60(b) from the March 5, 2015 Order (Doc. 133). The motion was denied on April 10, 2015 (Doc. 140). Both Plaintiff and Mr. Ambler have filed Notices of Appeal (Docs. 153, 154).

The instant motion was filed on April 3, 2015 (Doc. 134). Landmark also filed a Declaration of its counsel, Lauren Levy, with attachments (Doc. 135); the Declaration of attorney Evelyn M. Merchant, with attachments (Doc. 136); a Proposed Bill of Costs, with supporting exhibits (Doc. 137); and a Certificate of Good Faith Conference (Doc. 138).

On April 13, 2015, Plaintiff, through its Managing Member and new counsel, filed a motion to substitute Benford Law Firm, P.A. for the Law Office of Kevin C. Ambler, P.A., as counsel for Plaintiff (Doc. 141). Due to deficiencies in the motion, the undersigned granted the relief only in part, directing the Clerk to note new counsel's appearance as additional counsel and directing Mr. Ambler to personally move to withdraw or consent to substitution, should he wish to do so, noting: "As Mr. Ambler has a personal stake in the outcome of the pending motion for attorney fees (Doc. 134), even if Mr. Ambler is relieved of his representation of Plaintiff, he shall be allowed to continue his appearance in this matter on his own behalf, as an Interested Party." (Doc. 142). The motion was renewed with his express consent (Doc. 143), and the substitution of counsel was granted, with a caveat (Doc. 146). The undersigned terminated Mr. Ambler's representation of Plaintiff in this matter, but allowed him to remain in this action as an Interested Party. Notably, the Order stated that Mr. Ambler was permitted to retain his own counsel, should he wish to do so. *Id.*[2]

---

[2]This is not the first time the Court suggested to Mr. Ambler that he consider hiring an attorney to represent his interests here. Indeed, in November 2014, the Court identified the peril facing Plaintiff and its counsel in no uncertain terms, noting:

> Due to the nature of the issues raised in the motion and considering the possible personal and professional consequences that may result from a finding that fraud was committed in this case, the potential that counsel may,
> (continued...)

On April 16, Plaintiff, through its new counsel, moved for an extension of time until May 1, 2015, in which to file Plaintiff's Response to the instant motion (Doc. 144).  On April 20, Mr. Ambler filed his own motion for an extension of time, asserting "conflicts that have now arisen," as grounds (Doc. 145).  The Court "reject[ed] Mr. Ambler's premise that the situation he [found] himself in 'now' [was] somehow new or unanticipated" (Doc. 146), but granted both motions, in part, noting that Plaintiff and Mr. Ambler's responses are "due **on the date certain of May 1, 2015.**"  (Doc. 146, emphasis original).

Plaintiff, through its new counsel, filed its Response to the instant motion on May 1 (Doc. 148).  The Response included an Affidavit of Borivoje Radulovic (Plaintiff's principal) and a Declaration of Reasonable Attorney's Fees executed by attorney Brandon W. Banks (Docs. 148-1 and 148-2).

Although Mr. Ambler filed an Affidavit of expert witness Donna Greenspan (Doc. 149) and the Declaration of Jason Thomassy on May 1 (Doc. 150), he filed his Response to the Motion (which incorporates Plaintiff's response, the Affidavit and the Declaration) at 12:05 A.M. on May 2 (Doc. 151).  Five days later, on May 7, Mr. Ambler filed a Supplemental Motion for an extension of time to file the Response and to deem the document timely filed (Doc. 152).  The Court, taking Mr. Ambler to task for yet again missing a deadline in this case, declined to deem the filing timely, but accepted the filing as a matter of grace (Doc. 162).[3]

The Court held a hearing on the Verified Motion for Award of Attorney's Fees (Doc. 134), and all counsel appeared and argued (Doc. 161). Upon consideration of the motion, the evidence, the

---

[2](...continued)
themselves, be called upon to testify, and the possibility of conflicts arising between client and counsel, **counsel are advised to consider the appropriateness of having separate representation at the hearing and whether their clients may need independent representation.**

(Doc. 88 emphasis original).

[3]The undersigned explicitly held that the filing would be accepted and considered *despite* the fact that it was not timely filed (Doc. 165).

arguments of the parties and review of the applicable law, the undersigned makes the following findings of fact and conclusions of law.

II. *The Assertions of the Verified Motion and the Position of the Parties*

At hearing and in its papers, Plaintiff contends that the only issue before the Court is the scope of the award to be made pursuant to the March 5 finding of entitlement, and Plaintiff believes that Order imposed sanctions for only "discovery-related misconduct."[4]  Both Plaintiff and Mr. Ambler read the March 5 Order narrowly, to include only lawyer time spent at the hearing and in drafting the motion to dismiss, and to include only those costs allowed under Section 1920.  By contrast, Landmark contends that, under the unique circumstances of this case, including the findings of misconduct and the rejection of an Offer of Settlement, a much broader award is required. Landmark's position is that it is entitled to all of the fees, costs and expenses spent on this litigation, as well as reimbursement of the funds paid on the underlying related insurance claim (and expenses), plus interest. According to the motion:

> Landmark is seeking a total of $64,037.00 in attorney's fees and $9,694.49 in taxable costs and $3,208.25 for non-taxable expenses related to its filing its Motion to Dismiss, the Evidentiary Hearing and resulting Orders and motions filed. Landmark is also seeking a total of $72,577.15 in attorney's fees, $3,083.73 in taxable costs and $40,575.67 for non-taxable costs which encompass all other fees and costs spent by Landmark on this litigation, plus $29,336.23 which represents what Landmark paid to the Plaintiff and $2,378.90 paid to Wheeler DeFusco for what has now been determined to have been a fraudulent claim. As such, Landmark is seeking $136,614.15 for attorney's fees, $12,778.22 in costs, and $43,784.12 in non-taxable expenses, plus pre- and post-dismissal interest.

(Doc. 134).  As grounds, Landmark cites: 1) the Court's March 5 Order; 2) Fed. R. Civ. P. 68 and Florida Statute §768.79; 3) L. R. S. D. Fla. 7.3;[5] 4) 28 U.S.C. §1920 and Rule 54, Fed. R. Civ. P.; and 5) "applicable law." *Id.*

---

[4]In its response brief, Plaintiff appears to acknowledge that Rule 11 may also be at issue.

[5]As this is the Middle District, not the Southern District, the Local Rules of the Southern District have no application here. The Court assumes this was cited in error.

The parties also disagree as to whom should be held responsible to pay any sanction or award. Landmark declines to suggest a division on the facts available to it, although it notes that, at a minimum, Plaintiff's counsel "knew or should have known on October 30, 2014, the date of Richard MacKizer's deposition, that the case, including the affidavit filed by Plaintiff as part of its pleading, was possibly a misrepresentation to this Court and to Landmark and the evidence in the record shows that no due diligence[] was done to confirm or deny the allegations testified to in deposition or by the affidavits filed." (Doc. 134, p. 12). Plaintiff, through its new counsel, contends that any sins of omission or commission in this case were due to Mr. Ambler's dereliction in his duties to Plaintiff and, as such, any sanction should be borne solely, or in large measure, by Mr. Ambler.  Mr. Ambler, for his part, does not dispute that Rule 37 discovery sanctions already imposed as to entitlement (but not as to amount (*See* Doc. 70, p. 5) are his responsibility, but spent the lion's share of his time at argument contending that no other sanctions against him are appropriate because: 1) Plaintiff's claim had merit and should not have been dismissed; 2) the Court did not give him due process notice that Rule 11 sanctions were being considered against him, and no other basis – except Rule 37– applies; 3) he was under a duty to supplement production and that is why additional documents were presented, for the first time, on the last day of the evidentiary hearing; and 4) the only possible misconduct was the production of the new documents and "up until that point" the Court had  made no findings of bad faith.

As evidenced by the foregoing, the parties differ as to what issues are before the Court, with Plaintiff and Landmark disagreeing as to the scope of the sanction, as well as the appropriate amount, and with Mr. Ambler apparently (and erroneously) contending that the entitlement to *any* fees, except the Rule 37 fees already determined to be due, is, itself, at issue.  In view of the disparate views of the task at hand, before the Court can address the reasonableness of the requested amounts sought

herein and who should be taxed as responsible for payment of those amounts, it must clarify the scope of the award.

### III. Landmark is entitled to an award of reasonable attorney's fees and costs

Upon review of the papers filed and the extensive record herein, the Court finds several bases of entitlement to a fee and cost award here.

### A. The March 5 Order

As summarized above, the March 5 Order found that Landmark was entitled to an award of reasonable attorney's fees, as recommended by the undersigned.  Importantly, that Order adopted the lengthy Report as the opinion of the Court.  Included in that Report were many findings of fact (as well as legal conclusions) regarding Plaintiff and Mr. Ambler's conduct.  Absent timely objections to the Report, those factual findings are no longer at issue.[6]

Among the findings made by the undersigned and adopted by the District Judge are findings that Plaintiff and Mr. Ambler acted in the absence of good faith in these proceedings.[7]  The Court also

---

[6]As the Eleventh Circuit recently noted:

Accordingly, this Court adopted a new rule, which took effect on December 1, 2014, stating:

> A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice. 11th Cir. R. 3-1.

Additionally, our procedural rules require that the notice given to the parties of the consequences of failing to object to a magistrate judge's factual and legal conclusions should accompany the R & R. 11th Cir. R. 3-1, IOP 3.

*Mitchell v. U.S.*, No. 14-12271, 2015 WL 2145573, at *3 (11th Cir. May 8, 2015).

The Report included an admonition, noting that: "Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal." (Doc. 119).

[7]Mr. Ambler's contention at argument that the Court had never found that he or his client acted in bad faith in this case is erroneous. *See, e.g.,* Doc. 70, pp. 1-4 ("Nonetheless, *as Plaintiff has not acted in good faith* and has not met its discovery obligations, sanctions are warranted;" and "On this showing, *the Court cannot find that the numerous omissions here were made in good faith.* Upon review of the Response and for the reasons set forth above, the Court finds good cause

(continued...)

held that sanctions were warranted under *several* grounds of authority, including inherent authority, 28 U.S.C. §1927, Federal Rules 37, 16(f), and Rule 11.  The Court found that both Plaintiff and its counsel failed to obey Court orders, Mr. Ambler "unreasonably and vexatiously multiplied these proceedings," and Mr. Ambler violated Rule 11.  As is clear from the Report, adopted as the opinion of the District Court, to the extent Mr. Ambler believes sanctions were imposed solely based on Rule 11 and he did not receive any notice of same, he is wrong.[8]  Further, to the extent he wishes to revisit the factual findings supporting the sanction (including the factual findings that the claim based on a non-existent lease was without foundation and Mr. Ambler failed to conduct the required pre-suit investigation), that ship has sailed. The March 5 Order adopting the Report's findings that sanctions were appropriate based on *several* grounds, including inherent authority and vexatious multiplication of the proceedings, establishes entitlement to an award of attorney's fees and costs against Plaintiff and Mr. Ambler, beyond question.

---

[7](...continued)
to compel discovery and good cause to sanction Plaintiff . . .")

[8]

The record belies Mr. Ambler's contention that he received no specific warning that his conduct was ever at issue.  Following the filing of the Motion to Dismiss Complaint for Fabrication of Evidence, Fraud Upon the Court, Egregious Discovery Practices and Violation of Court's Discovery Order (Doc. 83), which raised serious issues of Plaintiff failing to comply with discovery orders, egregious conduct on the part of Plaintiff's counsel, and the prosecution of a complaint which contained false allegations, the Court held a previously scheduled hearing on November 17, 2014 (Doc. 87). At that hearing, the Court asked Mr. Ambler about the "quite alarming" allegations made in the motion, including the allegations that Plaintiff filed a false claim. Mr. Ambler told the Court that he was "appalled and affronted" by the allegations regarding a false affidavit, and denied involvement in same. The Court told Mr. Ambler that it was scheduling an evidentiary hearing on the motion – noting that there were "other issues raised in the motion besides this Affidavit regarding the way discovery was conducted"– and stated: "We're either going to clear your name or there's gonna be a real problem.  And your client."

Following the hearing, the Court issued its Notice of Hearing "on the matters raised in the Motion to Dismiss Complaint for Fabrication of Evidence, Fraud Upon the Court, Egregious Discovery Practices and Violation of Court's Discovery Order (Doc. 83)," which explicitly advised that "parties *and counsel* are on notice that all bases for the Court's authority are in consideration, including: *Rule 11* and other rules of the Federal Rules of Civil Procedure; Titles 18 and 26 United States Code; the Court's inherent and contempt powers; and the Rules Governing Members of the Florida Bar and the Bar of this Court." (Doc. 88-emphasis added). The Court was specific in setting forth the scope of the hearing, noting: "To the extent the evidence supports a finding that a party, a witness *or counsel* has violated the Federal Rules of Civil Procedure or any Order of this Court, appropriate sanctions will be considered and imposed, which may include striking of pleadings and/or the imposition of monetary or other sanctions."  *Id.*

Against this background, and in view of the *numerous* admonitions the Court issued to him personally over the course of this case, Mr. Ambler's assertion that he had no warning that his own conduct was ever in question is simply incomprehensible to this Court.

As for the scope of the monetary award established by the March 5 Order, the Court agrees with Plaintiff and Mr. Ambler that the Court did not award *all* attorney's fees and costs associated with the case, but "the reasonable attorneys' fees and costs incurred by Defendant in preparing and filing the Motion to Dismiss (Doc. 83) and in attending and presenting evidence at the evidentiary hearing before U.S. Magistrate Judge David A. Baker (Docs. 102, 104, 106)." The undersigned interprets this grant as including not only the actual time spent drafting the motion and attending the three days of evidentiary hearing, but a reasonable amount of time spent in discovering and preparing the evidence which was presented at the hearing and which formed the grounds of the Motion.

### B. Rule 37

The Court previously awarded Landmark its motion costs under Rule 37, regarding three motions to compel (Doc. 70), but carried the amount of the award with the case. Mr. Ambler acknowledged at hearing that those costs are properly taxed to him, as opposed to his client. The Court therefore finds that Rule 37 provides a basis for entitlement to reasonable attorney's fees in connection with the three motions to compel.

### C. Rule 68 and Florida Statute §768.79

In its motion, Landmark argues that it is also entitled to an award of fees and costs, from the date the Offer was served (August 28, 2014), pursuant to Fla. Stat. §768.79(6) and Fed. R. Civ. P. 68. According to the pertinent portions of state law:

> (2) The making of an offer of settlement which is not accepted does not preclude the making of a subsequent offer. An offer must:
> (a) Be in writing and state that it is being made pursuant to this section.
> (b) Name the party making it and the party to whom it is being made.
> (c) State with particularity the amount offered to settle a claim for punitive damages, if any.
> (d) State its total amount.
> The offer shall be construed as including all damages which may be awarded in a final judgment.
> (3) The offer shall be served upon the party to whom it is made, but it shall not be filed unless it is accepted or unless filing is necessary to enforce the provisions of this section.

(4) An offer shall be accepted by filing a written acceptance with the court within 30 days after service. Upon filing of both the offer and acceptance, the court has full jurisdiction to enforce the settlement agreement.

(5) An offer may be withdrawn in writing which is served before the date a written acceptance is filed. Once withdrawn, an offer is void.

(6) Upon motion made by the offeror within 30 days after the entry of judgment or after voluntary or involuntary dismissal, the court shall determine the following:(a) If a defendant serves an offer which is not accepted by the plaintiff, and if the judgment obtained by the plaintiff is at least 25 percent less than the amount of the offer, the defendant shall be awarded reasonable costs, including investigative expenses, and attorney's fees, calculated in accordance with the guidelines promulgated by the Supreme Court, incurred from the date the offer was served, and the court shall set off such costs in attorney's fees against the award. When such costs and attorney's fees total more than the amount of the judgment, the court shall enter judgment for the defendant against the plaintiff for the amount of the costs and fees, less the amount of the award to the plaintiff.

(7)(a) If a party is entitled to costs and fees pursuant to the provisions of this section, the court may, in its discretion, determine that an offer was not made in good faith. In such case, the court may disallow an award of costs and attorney's fees.

(b) When determining the reasonableness of an award of attorney's fees pursuant to this section, the court shall consider, along with all other relevant criteria, the following additional factors:

1. The then apparent merit or lack of merit in the claim.

2. The number and nature of offers made by the parties.

3. The closeness of questions of fact and law at issue.

4. Whether the person making the offer had unreasonably refused to furnish information necessary to evaluate the reasonableness of such offer.

5. Whether the suit was in the nature of a test case presenting questions of far-reaching importance affecting nonparties.

6. The amount of the additional delay cost and expense that the person making the offer reasonably would be expected to incur if the litigation should be prolonged.

FL ST § 768.79 (2014).  As the case is before the Court on diversity jurisdiction, the Court applies Florida substantive law, including this provision. *See Menchise v. Akerman Senterfitt*, 532 F.3d 1146 (11th Cir. 2008).

Neither Plaintiff nor Ambler addressed this claim in their responses to the motion.  At argument, however, Plaintiff argued that the Offer was not made in good faith, as Landmark "admitted" that there was $3,285.00 owed for a back flow preventer valve so, at the very least, the offer should have included that.  Plaintiff also argues that only fees and costs after August 28 could possibly be due, but that showing with just those amounts has not been made here.  For his part, Mr.

Ambler agrees with Plaintiff and argued at hearing that the Court should defer ruling on the request for fees pursuant to the Offer, until after the appeal has been concluded.

The Court sees no reason to defer consideration of this portion of the motion. Although appeals are pending, attorney's fees are a collateral matter. If the District Judge erred in adopting the recommendation and dismissing the action, the Court trusts the appellate court will so advise. In the meantime, there is no basis for additional delay.

On the merits, "[i]f an offer satisfies the requirements of § 768.79(1)-(6), as this one did, "[t]he sole basis on which a court can disallow an entitlement to an award of fees is if it determines that [the] offer was not made in good faith." *McMahan v. Toto,* 311 F.3d 1077, 1083 (11th Cir. 2002), *citing Levine v. Harris,* 791 So.2d 1175, 1177 (Fla. 4th DCA 2001). To the extent Plaintiff contends that there was an admission that it was owed $3,285.00 for a back flow preventer, Plaintiff does not introduce any evidence of this "admission." While counsel refers to the testimony of Susan Smith, the Court sees no such testimony in the file.[9] To the extent the public adjuster's deposition suggests that a claim for this amount was submitted to Landmark as a supplemental claim, Landmark, in its Answer and Counterclaim, denied Danubis' allegations that it was liable for additional damages under the Policy and specifically alleged that it "is not liable to pay any additional amounts claimed by Danubis in relation to its claim." (Doc. 7, p. 17). Moreover, there is nothing in the Complaint regarding a claim for a back flow preventer that was admittedly owed, but not paid. The Complaint generally references an "unpaid portion of Plaintiff's equipment loss according to proof at trial. . ." (Doc. 4, p. 7), but, as noted in the Report, this allegation, which is not presented as a separate claim, is so vague as to be all but meaningless (Doc. 119, fn. 11). Indeed, there is no evidence before this Court that Landmark was even aware of this particular claimed item as of the date of the filing of the

---

[9]It appears that Plaintiff took the deposition of the corporate representative on November 7, 2014, well after the dates the Offer was made and expired (Doc. 68, pp. 97-100; Doc. 81).

Offer, as Mr. Ambler had not tendered the required initial disclosures detailing the damages sought until well after the Offer expired.[10]

Nor is the Court persuaded by Mr. Ambler's insistence at hearing that the claim for lost rent from a long term lease was legitimate.  The Report adopted by the District Court included factual findings that no such lease (oral, written, implied or otherwise) ever existed between Plaintiff and MacKizer (as alleged) or Plaintiff and Metzger (as argued), or, indeed, between Plaintiff and *anyone.* These factual findings are conclusive for present and appeal purposes.  On this record, considering the statutory factors, including the lack of merit of the claim, the Court finds that as of the date of the Offer and expiration of same, Landmark's position that it had paid Plaintiff fully for the loss and owed Plaintiff nothing more was a reasonable assessment, given its significant defenses.  As such, the Offer was made in good faith.  *See McMahan v. Toto,* 311 F.3d 1077 (11th Cir. 2002) (Although nominal offers are suspect under the Florida offer of judgment statute where they are not based on any assessment of liability and damages, they can be valid if the offerors have a reasonable basis at the time of the offer to conclude that their exposure was nominal); *JES Properties, Inc. v. USA Equestrian, Inc.*, 432 F.Supp.2d 1283, 1294 (M.D. Fla.2006) (in determining whether an offer was made in good faith, the Court considers whether the offer bore a "reasonable relationship to the amount of damages suffered and was a realistic assessment of liability"); *Pickett v. R.J. Reynolds Tobacco Co.,* 948 F.Supp.2d 1314 (M.D.Fla. 2013), *affirmed,* 564 Fed.Appx. 981 (11th Cir. 2014) (In evaluating good faith of settlement offer, for purposes of Florida's offer of judgment statute, offer's reasonableness is measured at time of offer and the burden is upon the offeree to prove that the offeror acted without good faith). Pursuant to the state law, Landmark is due to be awarded "reasonable costs, including investigative expenses, and attorney's fees, calculated in accordance with the guidelines promulgated by the Supreme Court, incurred from the date the offer was served."

---

[10]This assumes that this item was even included in the initial disclosures, as they are not before the Court.

D.  "Applicable Law"

As noted above, Landmark seeks *all* fees and costs incurred for the entire litigation, as well as reimbursement for indemnity paid to the Plaintiff, as well as pre-suit expenses.  The Court agrees with Plaintiff and Mr. Ambler that there is no basis for such an award here. To the extent the request is predicated on Landmark's assertion that the Court determined that Plaintiff committed insurance fraud, the Court cautions that no such conclusion was made. One of the issues before the Court was whether the allegations in the Complaint regarding a long term lease had a factual foundation, and the Court determined they did not.  While the Court did note that: "The evidence compellingly *indicates* that Mr. Radulovic colluded with Metzger in an attempt to convert their potential business relationship into an existing lease and convince the insurance company that there was a claim for loss of rent," (Doc. 119 emphasis added), it did not address whether Plaintiff's conduct amounted to insurance fraud under Florida law and did not need to, as this was not a criminal trial under the criminal burdens of proof, and neither Plaintiff nor Mr. Ambler were before this Court on a charge of any such criminal offense.  In the context of the matters presented for hearing, drawing a conclusion that a crime occurred (or did not occur) beyond a reasonable doubt is not warranted.[11]

To the extent Landmark seeks reimbursement of pre-suit indemnity and expenses, such a claim is outside the pleadings of this case and must be sought (if at all) elsewhere.

As shown above, the Court finds Landmark is entitled to an award of reasonable attorney's fees and costs (as further described herein) 1) for the actual time spent drafting the motion to dismiss and attending the three days of evidentiary hearing, and a reasonable amount of time spent in discovering and preparing the evidence which was presented at the hearing and which formed the grounds of the Motion; 2) in connection with the motions to compel; and 3) for the time period from

---

[11]The only other authority noted is Rule 54, Fed. R. Civ. Pro. (2015).  The Rule does not provide a right to attorney's fees (as opposed to a procedure for seeking them), and neither the indemnity nor pre-suit investigative expenses are "costs" allowed prevailing parties under 28 U.S.C. §1920.

August 28, 2014, the date the Offer was served.  As a practical matter, the latter period encompasses the first two time periods, so the award should be based on the time period from August 28, 2014, onward.  The Court now turns to calculation of this amount.

*IV. Calculating the Award*

*–Attorney's Fees*

As correctly observed by Plaintiff, the motion does not explicitly segregate only those fees and costs sought in connection with the Offer.  However:

> As the Supreme Court has explained, "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). When deciding a motion for attorney's fees, courts rarely reopen discovery, and evidentiary hearings are often unnecessary. See Fed.R.Civ.P. 54(d)(2) advisory committee's note; 2 Mary Francis Derfner & Arthur D. Wolf, *Court Awarded Attorney Fees* § 25.01 (2007) ("[P]ost-judgment discovery into fee issues is rare."). A determination of a fee award by a district court "solely on the affidavits in the record" is "perfectly proper." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir.1988).

*Menchise v. Akerman Senterfitt*, 532 F.3d 1146, 1153 (11th Cir. 2008).  Here, Landmark has submitted detailed billing of its attorney's fees, broken down by fees in connection with the Motion to Dismiss (and related matters):

| Timekeeper | Hours | Rate | Amount |
|---|---|---|---|
| Lauren D. Levy, Esq. | 257.3 | $200 | $51,460.00 |
| Jennifer C. Davis, Esq. | 57.2 | $185 | $10,582.00 |
| Paraprofessional | 21.0 | $95 | $ 1,995.00 |
| TOTAL | 355.50 | | $ 64,037.00 |

and fees for the rest of the litigation:

| Timekeeper | Hours | Rate | Amount |
|---|---|---|---|
| Lauren D. Levy, Esq | 265.9 | $200 | $53,180.00 |
| Jennifer C. Davis, Esq | 83.9 | $185 | $15,521 .15 |
| Paraprofessional | 40.8 | $95 | $ 3,876.00 |

| | |
|---|---|
| TOTAL | $72,577.15 |

*See* Doc. 135. Additionally, counsel has submitted dated invoices, from which the Court can observe that, from December 2013 to August 28, 2014 (the date of the offer), counsel worked as follows:

| Timekeeper | Hours |
|---|---|
| Lauren D. Levy, Esq. | 98.3 |
| Jennifer C. Davis, Esq. | 53.3 |
| Paraprofessional | 23.56 |

If we add the first two tables for a total amount and reduce the hours spent prior to the date of the Offer from the total fees claimed, Landmark's claim is as follows:

| Timekeeper | Hours | Rate | Amount |
|---|---|---|---|
| L. Levy, Esq. | 424.9 | $200 per hour | $84,980.00 |
| | (257.3 +265.9-98.3) | | |
| J. Davis, Esq. | 87.8 | $185 | $16,243.00 |
| | (57.2 +83.9 - 53.3) | | |
| Paraprofessional | 38.2 | $95 | $3,632.80 |
| | (21 +40.8 -23.56) | | |
| **Total** | | | $104,855.80 |

The Court now turns to whether this fee is reasonable. Per the state law, the fees are to be calculated in accordance with the guidelines promulgated by the Supreme Court. Federal courts apply the "lodestar" method for calculating attorneys' fees, multiplying a reasonable hourly rate by a reasonable number of hours expended. *See Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1994); *Norman v. Housing Auth. of Montgomery,* 836 F.2d 1292, 1299 (11th Cir. 1988). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman,* 836 F.2d at 1299 (*citing Blum,* 465 U.S. at 895-96 n. 11).

In determining what is a reasonable, this Court is mindful of the factors identified in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974),[12] namely:  (1) time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

"The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman,* 836 F. 2d at 1303.  An applicant may meet his or her burden by producing either direct evidence of rates charged under similar circumstances, or opinion evidence of reasonable rates. *Norman*, 836 F.2d at 1299.  In addition, the court may use its own expertise and judgment to make an appropriate independent assessment of the value of an attorney's services. *Id.* at 1303. With respect to hours, if an applicant's documentation "is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 434.

A.  Hourly Rates

To support the hourly rates requested, Landmark offers the Declaration of lead attorney Lauren D. Levy (Doc. 135) and expert witness attorney Evelyn Merchant (Doc. 136-1).  According to the Declarations, both Ms. Levy and Ms. Merchant are well-experienced in litigating insurance matters and well established in the South Florida legal community. Ms. Levy, the managing member of Levy Law Group ("LLG"), and Ms. Merchant both conclude that "the rates charged by the

---

[12]*Johnson* was overruled on other grounds, *Blanchard v. Bergeron*, 489 U.S. 87 (1989).

attorneys and paraprofessional at LLG [Ms. Levy's firm] are reasonable and consistent with the South Florida marketplace and are warranted based on the skills, experience, and reputation of LLG's attorneys." *Id.* While the Court does not doubt this representation, the relevant market is not South Florida. A reasonable hourly rate is determined by "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Barnes*, 168 F.3d at 437 (quoting *Norman*, 836 F.2d at 1299). Generally, "the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed.' " *Barnes*, 168 F.3d at 437 (internal citation omitted). The case was filed in Orlando. As neither Declaration speaks to the customary fees charged in the relevant market, they do not persuade.

Plaintiff has filed the Declaration of Brandon Banks, Esq., an Orlando attorney (Doc. 148-2). Mr. Banks, however, does not offer an opinion as to the reasonableness of the rates requested.

Mr. Ambler filed the Affidavit of Donna Greenspan Solomon, Esq., of Solomon Appeals, Mediation & Arbitration in Ft. Lauderdale, Florida (Doc. 147-1; 149). Ms. Solomon finds Ms. Levy's hourly rate to be reasonable, but opines that it "is unreasonable for Davis's hourly rate to be in such close proximity to that of Levy. A more reasonable rate for Davis would be approximately $100 per hour. A more reasonable rate for that of the unidentified paraprofessional would be approximately $75 per hour." (Doc. 149-1). This opinion is based on her twelve years with a Ft. Lauderdale law firm, where she became "familiar with the rate structure for insurance defense work." *Id.* While Ms. Solomon's credentials are impressive, her experience with the insurance department of a Ft. Lauderdale law firm over four years ago does not equate with knowledge as to the *current* rates charged in the Central Florida market for similar work.

In the absence of competent evidence as to the reasonableness of these rates in the relevant market, the Court relies on its own expertise. Absent objection, the Court agrees that $200 per hour

is a reasonable rate for a managing partner for insurance defense litigation in federal court in Orlando. Less clear is the appropriateness of the fees charged for the associate and the paraprofessional as Landmark presents no biographical information as to the qualifications of either. As rates are measured in part on the skill, reputation and experience of the timekeeper, absent evidence of same, the Court cannot find the rates sought to be reasonable.[13] The Court finds reasonable rates for insurance defense work in this market for low level associates (absent evidence, the Court cannot presume otherwise) to be no more than $125 an hour.  The Court likely finds a reasonable "paraprofessional" rate to be $70 an hour.

B.  Amount of Hours

Both Plaintiff and Mr. Ambler challenge the amount of hours claimed as being excessive. Upon review, the Court agrees that the hours claimed (as adjusted by the Court above) are still too high to be considered reasonable.

In determining the amount of reasonable hours, the usual procedure is to review each time entry. Here, however, the Court would have to wade through reams of time entries, reflecting over five hundred billed hours, to perform such a review.  Such an expenditure of judicial time is impractical.  *See Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) (where the fee motion and supporting papers are voluminous, the court need not engage in an hour by hour analysis); *see also Hensley,* 461 U.S. at 437 ("A request for attorney's fees should not result in a second major litigation").  Rather, the Court applies the *Johnson* factors and its own experience and concludes that the total amount of hours sought here cannot be taxed as "reasonable" fees.

While the misconduct of Plaintiff and its counsel no doubt protracted these proceedings, a review of the docket shows that Landmark had its own share of missteps along the way.  Although

---

[13]This is especially so in the case of the "paraprofessional."  As described, the Court does not know if this person is a paralegal, certified legal assistant, law clerk, legal secretary, or otherwise. Depending on his or her skills, training and experience, a rate of $95 may or may not be reasonable.  As it is Landmark's burden to establish the reasonableness of the rate, however, the Court cannot presume the rate is justified, on this showing.

these missteps were not nearly as serious or frequent as the sins committed by Plaintiff and its counsel, it is nonetheless not reasonable to shift the costs of ill-conceived filings to one's adversary.[14]

Moreover, a cursory review of the time sheets shows entries that include clerical tasks or tasks which clearly do not require partner level effort.[15]  Reductions for the inclusion of clerical and low caliber work must be made. *See, generally, Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3rd Cir. 1983) ("Nor do we approve the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates.  Routine tasks, if performed by senior partners in large firms, should not be billed at their usual rates.  A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn.")

The Court also notes that counsel has included numerous hours spent in travel time.  The case was filed in Orlando.  Landmark hired counsel located in Miami.  While Landmark is entitled to choose its counsel, the selection of out of town counsel necessarily increased the amount of hours charged to this file.  "While [a party] is certainly free to choose whatever staffing arrangements it desires in litigating a case, when it seeks to visit the cost of that choice on its adversary, it is only entitled to reimbursement of reasonable costs." *Chemische Fabrik Budenheim K G v. Bavaria Corp. Int'l*, No. 6:08-cv-1182-ORL22DAB, 2010 WL 98991, at *5  (M.D. Fla. Jan. 6, 2010).  Indeed, "[c]ourts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *American Civil Liberties Union of Georgia v. Barnes,* 168 F.3d 423 (11th Cir.1999).  To the extent the use of out of town counsel was a convenience for Landmark, no basis for shifting the costs of that preference are shown here.

---

[14]For example, see Landmark's premature filing of service of the Notice of Offer of Judgment (Doc. 53, stricken at Doc. 54); the Court's denial of Landmark's motions for extension of time (due to non-compliance with the local rule and on the merits) (Docs. 60, 61, 62, 63); the District Judge's denial of the motion to strike affirmative defenses (Docs. 65, 67); and the withdrawn notice of conflict (Docs. 158, 159).

[15]*See, e.g.,* Ms. Levy's November 4, 2014 entry for "Draft/revise Preparation of Notice of Filing Transcript of the Deposition of Richard MacKizer conducted on October 30, 2014."

With respect to the *Johnson* factors, the time, labor and skill required to litigate the suit was significant, but not exceptionally so. The issues were not novel, but the Court agrees with counsel that the presentation of those issues here was far from the normal course of insurance claim litigation. The Court also accepts as self-evident that time spent working on this case is time that was unavailable to pursue other cases. There is no suggestion that the defense was a contingent fee case and there were no particularly compelling case related time limitations. The experience, reputation and ability of Plaintiff's counsel are acknowledged, and are reflected in the hourly rates. The length of the professional relationship with Plaintiff does not appear to be relevant, nor does the case appear to be undesirable (although it certainly became so for all counsel and the Court).

"When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivens v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). In consideration of all of the foregoing, the Court finds an across the board cut of 20% of the claimed hours to be appropriate, and calculates the lodestar as follows:

| Lauren Levy, Esq. | 20% of 424.9 hours = 339.92 | x $200 hourly rate = **$67,984.00** |
| J. Davis, Esq. | 20% of 87.8 hours = 70.24 | x $125 hourly rate = **$8,780.00** |
| Paraprofessional | 20% of 38.2 = 30.56 | x $70 hourly rate = $ **2,139.20** |
| | | **TOTAL = $78,903.20** |

The lodestar reflects the Court's opinion of a reasonable fee for all appropriate work performed within the scope of the entitlement to attorney's fees discussed above.

– *Costs*

In its motion, Landmark seeks an award of "non-taxable costs" of $3,208.45, relating to the Motion to Dismiss and Evidentiary Hearing (consisting of travel, meals, parking for the evidentiary hearing); and $40,575.67 for "non-taxable costs being sought related to the remainder of the litigation

and pre-suit payment(s) on the insurance claim." (Doc. 134).  The Court finds these costs to be non-compensable.

As Plaintiff recognizes in its response brief, under Rule 54(d), a court may only tax costs as authorized under 28 U.S.C. § 1920. *See, e.g., Beach-Mathura v. Am. Airlines, Inc.*, 571 Fed. Appx. 810, 812 (11th Cir. Fla. 2014) citing *United States E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000). Costs permitted under 28 U.S.C.§ 1920 are:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title [28 USC § 1923];
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title [28 USC § 1828].

Section 1920 does not provide a right to recover travel expenses, meals, insurance indemnity payments or the other "non-taxable" expenses Landmark claims.  These expenses should not be included in the award.

That said, Landmark seeks recovery of *taxable* costs under 28 U.S.C. §1920 pursuant to a separate Bill of Costs (Doc. 137).  Upon review of that Bill, and noting no objection, the Court finds the itemized costs set forth in that Bill (totaling $12,778.22) should be taxed.

In sum, the Court finds that an award of **$78,903.20** in attorney's fees and **$12,778.22** in taxable costs are appropriate here.

### V. Apportioning the Award

Having determined that Landmark is entitled to an award of attorney's fees and costs, the last step is to determine how that award should be imposed in the unique circumstances present here.  If the basis of the award was solely the Offer of Judgment, the award would be taxed against Plaintiff. This result is complicated by the finding that fees are also due to be awarded against Mr. Ambler and

-21-

Plaintiff, as sanction.  As Landmark is not entitled to a dual recovery, and as Plaintiff and Mr. Ambler obviously differ on where the ax should fall (although Mr. Ambler acknowledges that the Rule 37 sanction is his alone), it is left to the Court to apportion the award/sanction.

Although Plaintiff's principal insists on his innocence of the failures to respond to discovery in this matter, and paints himself as having "no, or very little, knowledge that the evidence underlying the claims was frivolous or false," the course of these proceedings and the testimony at hearing show Mr. Radulovic was intimately and personally involved in formation of the insurance claim and the prosecution of the litigation.[16]  Further, even assuming that Mr. Ambler failed to keep his client informed as to the numerous filings and Court orders (a finding the Court need not make for present purposes), Danubis chose this counsel and is responsible for actions made in its name. The Court does not accept as credible the assertion that Danubis had no idea of what was going on in this case.

On the other hand, Mr. Ambler's failings, painstakingly detailed in the Report, are exceptional. His blindness to the expectations of lawyers practicing before this Court, despite numerous admonitions and clear warnings, is remarkable in this Court's experience.  In addition to the matters set forth in the Report, Mr. Ambler's response to the current motion is illustrative of this professional blind spot.

As evidence of his lack of fault in the prosecution of this case, Mr. Ambler offers the Affidavit of his law clerk, Jason Thomassy (Doc. 150-1). According to Mr. Thomassy, Mr. Ambler began experiencing internet difficulties in September 2014, and, for a period of *two weeks* "the firm received virtually no emails at all through its firm email accounts." *Id.* This problem lingered, with the firm receiving only partial communications for some time afterwards, which "adversely affected" the ability to timely respond to various deadlines.  Mr. Thomassy advises that "Mr. Ambler's sole paralegal and office manager, who was 73 years old [and] was experiencing health issues and was

---

[16]For example, Mr. Radulovic himself retrieved the adjuster's claim file and then failed to produce it in discovery.

taking off quite a bit of time and then only working 4 days a week," was "stumped" by the technological complexities of the problem and could not figure out what to do.  She confided her inability to deal with the issue to Mr. Thomassy, but was "not forthcoming" to Mr. Ambler, who believed that the situation was being "handled."'  *Id.*  Thus, Mr. Ambler has sent his law clerk to swear to the Court that 1) the firm received no emails for a period of over two weeks and 2) Mr. Ambler was unaware of the "full gravity" of the problem because he was relying on his ill, part-time, technologically inexperienced office manager to "handle" it. These admissions of unprofessionalism in the operation of his law practice do not excuse or even explain Mr. Ambler's derelictions.

Mr. Ambler filed no notice in this docket during September or early October, notifying the Court and counsel of this outage.  Indeed, in his Response to the Court's Order to Show Cause, filed October 14, 2014, Mr. Ambler advises that his failure to comply with deadlines was the result of "the demands of [a] federal arbitration proceeding" and the fact that his clients were traveling and unavailable (Doc. 68).   No mention of any communication outage is made.  More importantly, assuming such an outage had occurred, professional obligations to other counsel and the Court, including the obligation to meet deadlines and respond to opposing counsel's emails, are personal to the attorney. The inability to receive or recover any emails has wide ranging business and ethical implications for a practicing attorney, and the suggestion that Mr. Ambler was unaware of the seriousness of this problem, which persisted for *weeks*, is telling.  The Court knows of no other counsel who would delegate the responsibility for resolving such a catastrophic communications breakdown to a newly hired law clerk and/or other part time, non-technical staff. To the extent Mr. Ambler offers this Affidavit to show that his numerous missteps were not his fault and he was not responsible, it has had the opposite effect.

In view of the foregoing, and absent a compelling reason to do otherwise, it is the recommendation of the undersigned that the Court find that Plaintiff and Mr. Ambler are jointly and

severally liable for the award.  It is therefore **respectfully recommended** that the motion be **granted, in part,** and that judgment be entered in favor of Landmark and against Plaintiff and Mr. Ambler, jointly and severally, in the amount of **$78,903.20** in attorney's fees and **$12,778.22** in costs.

A party failing to file written objections to a magistrate judge's findings or recommendations contained in this report within fourteen (14) days from the date of its filing waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.

Recommended in Orlando, Florida on July 21, 2015.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Interested Party
Courtroom Deputy